526 So.2d 1302 (1988)
Marceline TATE, Plaintiff-Appellant,
v.
HANOVER INSURANCE COMPANY, et al. (Rockwood Insurance Co.), Defendant-Appellee.
No. 87-244.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1988.
Vincent J. Saitta, Lafayette, for plaintiff-appellant.
Plauche, Smith & Nieset, Michael J. McNulty, III, Lake Charles, William Aubrey, Lafayette, for defendant-appellee.
Before FORET and LABORDE, JJ., and REGGIE, J. Pro Tem.[*]
*1303 EDMUND M. REGGIE, Judge Pro Tem.
There are two main issues raised in this appeal: (1) whether, under the facts of this case, a corporation properly excluded from insurance coverage corporation-owned vehicles involved in accidents in which a named employee of the corporation was driving; and (2) if so, whether there nevertheless exists uninsured motorist coverage for the benefit of such employee.

SUMMARY
Plaintiff's son was driving an 18-wheel tractor-trailer truck for his employer, acting within the course and scope of his employment, when an automobile driven by an uninsured motorist ignored a stop sign and red flashing light and collided with the truck. Plaintiff's son and two passengers in the other vehicle were killed as a result of the collision.
Plaintiff filed suit against the insurer of her son's employer, seeking to collect on her deceased son's behalf under the uninsured motorist provisions of the policy. The insurance company denied coverage, citing a specific exclusion in the policy for any losses or damages sustained while a motor vehicle owned by the employer was driven by Plaintiff's son.
At the conclusion of a trial on the issue, the lower court held that the corporate employer validly excluded Plaintiff's son from coverage under its policy and that uninsured motorist coverage under the employer's policy was unavailable to the deceased. We find no clear error in that judgment and accordingly affirm.

FACTS
On August 16, 1982, Norris Tate, an employee of Godeaux and Ardoin Trucking, Inc., a Louisiana corporation (Trucking Company), was driving an 18-wheel tractor trailer truck within the course and scope of his employment. The tractor trailer truck was struck by a car driven by Clarence Hebert, when Hebert failed to stop at a stop sign and flashing red light.
Norris Tate and two passengers in the Hebert vehicle were killed as a result of the accident. Mr. Hebert was an uninsured motorist. Mrs. Marceline Tate, the mother of Norris Tate filed suit against the Hanover Insurance Company (Hanover), the Trucking Company's vehicle insurer, seeking to collect damages under the uninsured motorist provisions of the Company's policy.[1]
Prior to the accident, however, Nelson Godeaux, President of the Trucking Company, had signed a policy endorsement that excluded Norris Tate from coverage under Hanover's policy. The endorsement, identified in the policy as Endorsement No. 6, provides as follows:
EXCLUSION OF NAMED DRIVER
In consideration of the premium at which the policy is written, it is agreed that the company shall not be liable and no liability or obligation of any kind shall attach to the company for losses or damages sustained while any motor vehicle insured hereunder is driven or operated by Norris Tate.
The critical issues in this case revolve around the validity of the endorsement and the scope of the exclusion of coverage for Norris Tate.
The Trucking Company is a closely-held corporation, with Nelson Godeaux and Carrol Ardoin each owning 50% of the outstanding stock of the Company. Nelson Godeaux is the President and General Manager of the Trucking Company and Carrol Ardoin is the Secretary-Treasurer. Godeaux, who has very little education and would be classified as illiterate except that he can sign his name and recognize a few words, handles the day-to-day business affairs of the Company and works full-time for the Company. Ardoin, on the other hand, has full-time employment outside of the Trucking Company but because of his education and experience, generally handles the bookkeeping, banking, business *1304 and insurance transactions for the Company. The Company is run quite informally, and, as with many closely-held corporations, its business affairs are conducted without formal resolutions, meetings, minutes and the like.
Prior to and at the time of the Tate accident, the insurance business of the Trucking Company was handled by the E.A. Veillon Agency (Veillon). According to testimony produced at trial and accepted as true by the lower court, Hanover requested through Veillon for several years that the Trucking Company exclude Norris Tate from coverage under the policy because of his poor driving record.
Mr. Courville Fontenot was primarily responsible for the Trucking Company account until his departure from Veillon in February, 1982. During the period of his employment, however, Fontenot discussed Hanover's desire for the exclusion with Ardoin. After Fontenot left Veillon, the matter eventually was turned over to Nikki Tolar who was supervised by Sue Lafleur.
Tolar testified at trial that she made three separate telephone calls to Ardoin concerning the endorsement, and that he repeatedly said that he was going to come in to sign it, but never did. According to Tolar's testimony, Ardoin told her during their last telephone conversation that he was too busy to sign and that she should ask Godeaux to do it instead. While Ardoin gave vague and conflicting testimony on this point during trial, the lower court specifically held, based on his first-hand observation of the witnesses, that Tolar's testimony was more credible.
Tolar further testified that she subsequently called Godeaux on two separate occasions to come in and sign the endorsement; that he came into the agency after the second call and signed it; that she explained to him prior to his signing that the endorsement excluded all coverage for Norris Tate under the Hanover policy; that she had no reason to believe that Godeaux, the president, was unauthorized to sign for the Trucking Company; that Godeaux had no questions after her explanation of the endorsement; that she exerted no force or pressure on Godeaux to sign the endorsement; and that she did not know that Godeaux could not read and write. Her testimony was confirmed by Sue Lafleur, who witnessed the signing. Godeaux testified that he did not remember the details of the signing. Based on first-hand observation of the witnesses, the lower court accepted as true the testimony of Nikki Tolar.

OPINION
We turn first to the issue of whether the Trucking Company validly excluded Norris Tate from its policy with Hanover. According to the facts as determined at trial, employees of Veillon discussed the exclusion of Tate at length with Ardoin, who then instructed Godeaux, his co-owner and the President and General Manager of the Company, to execute the endorsement excluding Tate on behalf of the Company.
We will only disturb factual findings by the lower court if they are manifestly erroneous. Ragas v. Argonaut, 388 So.2d 707 (La.1980); Canter v. Koehring, 283 So.2d 716 (La.1973). The lower court in the instant case had the opportunity to observe first-hand the demeanor of the witnesses and to evaluate their credibility. We find no clear error in those factual determinations and accordingly affirm them.
Given the facts as adduced at trial, we must determine whether a formal board meeting and directors' resolution were necessary before the Trucking Company could validly exclude Norris Tate as an insured under its policy. We conclude that it was not. The Plaintiff gives much weight to the First Circuit decision in Arcemont v. Voisin, 468 So.2d 785 (La.App. 1st Cir. 1985) in support of the proposition that a corporate resolution is necessary before a corporation can validly waive uninsured motorist coverage under its automobile policy. However, the Arcemont case is clearly distinguishable from the one at bar.
The main issue raised in Arcemont was whether a corporation validly waived uninsured motorist coverage on a fleet of cars it insured through State Farm Insurance *1305 Company. The court in that case held that it had not because the officer supposedly waiving such coverage had neither the actual authority, as evidenced by a valid corporate resolution, nor the apparent authority to waive such coverage.
In strictly construing the acts leading up to the alleged waiver, the Arcemont court gave much weight to the public policy in Louisiana that an insured be covered by uninsured motorist coverage unless such insured rejects the coverage in writing. Quoting from Aramburo v. Travelers Ins. Co., 426 So.2d 260, 261 (La.App. 4th Cir. 1983), the Arcemont court stated that "It... [is] the insurer's burden to prove either rejection or else selection of the lower limits if the insurer is to escape the statutory obligation that its policy shall contain UM coverage...." Arcemont, 468 So.2d at 790.
The instant case is readily distinguishable from Arcemont. First, the case at bar does not involve a waiver of uninsured motorist coverage by an insured under the uninsured motorist statute. This case involves instead a named person exclusion from coverage under the Trucking Company policy.
Furthermore, even if the exclusion of a named insured were subject to the same level of scrutiny as the waiver of uninsured motorist coverage in the Arcemont case, a corporate officer, as recognized by the Arcemont court, can bind his corporation if such officer acts with either actual or apparent authority. We need not decide in the instant case whether Godeaux could act with actual authority absent a corporate resolution authorizing him to sign the endorsement because, at the very least, he was clothed with apparent authority and the Trucking Company is bound by his signature.
The apparent authority doctrine was created to protect third-parties dealing in good faith with corporate officers if two requirements are met: (1) the principal (corporation) must make some manifestation to the third-party of its agent's (officer's) authority; and (2) the third-party must rely reasonably on the purported authority of the agent as the result of the principal's manifestation. Lilliedahl & Mitchel, Inc. v. Avoyelles Trust & Savings Bank, 352 So.2d 781, 787 (La.App. 3rd Cir. 1977); AAA Tire & Export, Inc. v. Big Chief Truck Lines, Inc., 385 So.2d 426, 429-30 (La.App. 1st Cir.1980). Those two requirements clearly are met in the instant case.
The lower court found and we agree that Ardoin, who was 50% owner and an officer of the Trucking Company, specifically instructed a Veillon employee to have Godeaux sign the endorsement excluding Norris Tate from coverage. Furthermore, Godeaux, the remaining 50% owner, president and only other officer of the Trucking Company, went into the agency and signed the endorsement. We can imagine no clearer manifestation of an officer's authority to bind his company.
We do not find Godeaux's inability to read and write to be an impediment to the validity of his signature. Veillon employee Nikki Tolar explained that the endorsement he was signing would exclude Norris Tate from coverage under the policy. Moreover, Godeaux himself testified that he and Ardoin had discussed the exclusion of Norris Tate from the policy and that Ardoin had instructed him to go to Veillon's offices to sign the endorsement. A person is presumed to have knowledge of the contents of a document he is signing. BNO Leasing Corp. v. Hollins & Hollins, Inc., 448 So.2d 1329 (5th Cir.1984) writ denied, 450 So.2d 961 (La.1984); Tweedel v. Brasseaux, 433 So.2d 133 (La.1983). The facts surrounding Godeaux's signature do not refute and, indeed, support that presumption.
There is no evidence of fraud, coercion or duress in Veillon's obtaining Godeaux's signature on the endorsement excluding Norris Tate from coverage. We agree with the lower court, therefore, that the endorsement validly was signed on behalf of the Trucking Company. We turn, then, to the scope of the endorsement.
Plaintiff urges that even if Norris Tate is properly excluded from the Hanover policy, *1306 such exclusion cannot be so broadly read as to exclude uninsured motorist coverage for Tate. Plaintiff relies on the Supreme Court's decision in Baesler v. State Farm Mutual Automobile Insurance Company, 481 So.2d 131 (La.1986), to support the claim that uninsured motorist coverage was still available.
In Braesler, the Court interpreted a corporate policy provision that excluded from liability coverage automobiles furnished for the regular use of an employee in certain specified circumstances, but which nevertheless insured the employee in other circumstances. In holding the "policy expressly covered the employee for uninsured motorists while driving any vehicle, while occupying any vehicle, or while walking down the road," Baesler, 481 So.2d at 132, the Supreme Court relied on the language of the policy before it and not on an overriding principle of law. An examination of the language of the policy in the case at bar distinguishes the facts from those in the Baesler case.
The Hanover policy was purchased by and issued to the Trucking Company. Section D of the Uninsured Motorist Endorsement that is part of the Hanover policy defines insured for purposes of uninsured motorist coverage as follows:
1. You (the Trucking Company) or any family member.
2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
3. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured.
None of those descriptions is applicable to Norris Tate. In the endorsement validly executed by the president of the Trucking Company, Hanover had no liability for any losses or damages sustained while any motor vehicle otherwise insured under the policy was being driven by Norris Tate. That exclusion had the effect of causing a vehicle driven by Tate to lose its covered status under the policy. Tate thus was not a person occupying a covered vehicle under the policy. Thus, the uninsured motorist provisions of the Hanover policy were inapplicable to him.
As this Court held in Robertson v. Cumis Ins. Co., 355 So.2d 1371, 1373 (La.App. 3rd Cir.1978), "In order for one to be insured under the `uninsured' and `underinsured' provisions he must first be insured under the liability provisions. This seems to be so well established that we do not feel it requires further comment. See: Seaton v. Kelly, 339 So.2d 731 (La.1976)."
Furthermore, the named party exclusion is well recognized in the insurance industry and is not contrary to public policy. "An insurance policy is a contract between two parties, and the parties may insert any provision or exclusion they desire so long as the policy complies with the Insurance Code or considerations of public policy.... [W]e know of [no policy] that declares that the exclusion of a driver from coverage under a policy is against public policy." Hurst v. Hardware Mutual Casualty Company, 234 So.2d 802, 807 (La.App. 1st Cir.1970).
It further does not violate public policy for a named insured to waive uninsured motorist coverage. Smith v. Royal Globe Insurance Company, 424 So.2d 1277 (La.App. 3rd Cir.1982). The cases, such as Fields v. Western Preferred Casualty, 437 So.2d 344 (La.App. 2nd Cir.1983), writs denied, 440 So.2d 528 and 754 (La. 1983), which discuss the public policy applicable to compulsory liability insurance in this State are inapplicable to a discussion of the public policy applicable to uninsured motorist coverage. Compulsory liability insurance is a prerequisite to registering a motor vehicle in the State of Louisiana, while uninsured motorist coverage clearly is not. It rather is a matter of contract between the insured and the insurance company.
In the instant case, the Trucking Company validly contracted with Hanover to exclude from coverage any vehicle being operated by Norris Tate. The language of the uninsured motorist provision of the *1307 Hanover policy unequivocally provides that an occupant of a vehicle that is not covered by the policy, which the vehicle being driven by Tate was not, is not covered by the uninsured motorist provisions of the policy.
For the foregoing reasons, the judgment of the trial court is affirmed; costs of this appeal are assessed against the Plaintiff.
AFFIRMED.
NOTES
[*] Judge Edmund M. Reggie, Retired, participated in this decision as Judge Pro Tempore by appointment of the Louisiana Supreme Court.
[1] Subsequent to the filing of her petition, Plaintiff died and the cause of action is being maintained by the Administratrix of her estate.