521 So.2d 1241 (1988)
Sharon F. STEWART, Plaintiff-Appellee,
v.
Susan H. ROBINSON, et al., Defendants-Appellants.
No. 87-3.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
Rehearing Denied April 11, 1988.
Writ Granted June 2, 1988.
*1242 David W. Robinson, Charles W. Roberts, Baton Rouge, for plaintiff-appellee/appellant.
Mouton & Roy, Kenneth M. Henke, Lafayette, Owen, Richardson, Taylor, Mathews & Atkinson, Hampden White, Baton Rouge, for defendant-appellee.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, John G. Torian, Steven B. Rabalais, Lafayette, for defendants-appellants.
Before GUIDRY, YELVERTON and KNOLL, JJ.
GUIDRY, Judge.
Sharon F. Stewart filed this suit for damages allegedly resulting from an automobile accident which occurred on June 20, 1980. The automobile occupied by Sharon and driven by Cathy St. Clair Loret was struck head-on by an automobile being driven by Susan H. Robinson. Sharon settled with the primary uninsured motorist insurer of the vehicle in which she was riding and received the sum of $95,000.00. On June 4, 1981, plaintiff filed this suit against Susan H. Robinson. Subsequently, she amended her petition to name Dairyland Insurance Company (hereafter Dairyland) and The Aetna Casualty and Surety Company (hereafter Aetna) as additional defendants, the former being sued as the liability insurer of Susan H. Robinson, and the latter being sued under the UM coverage contained in a "Business Auto Policy" issued by Aetna to plaintiff's employer, Universal Productions and Publications, Inc. (hereafter Universal). Universal's worker's compensation insurer, American Mutual Liability Company (hereafter American), intervened to recover the compensation *1243 and medical benefits paid and to be paid by it to plaintiff.
Aetna filed a motion for summary judgment arguing that its policy did not provide UM coverage for plaintiff. The motion was denied and the matter proceeded to trial. At the commencement of trial, the court noted the absence of Ms. Robinson's counsel and determined from the record that he had not been sent a notice of trial. For this reason, the trial court severed the case as to Ms. Robinson and proceeded with the trial against the other parties. After a hearing on the merits, the trial judge concluded that the Aetna policy did afford UM coverage to plaintiff. The court rendered judgment in favor of plaintiff for the sum of $750,000.00. Dairyland was cast for its per person liability limits of $5,000.00. Aetna was decreed entitled to a credit for the amounts provided by Dairyland and the primary UM coverage of $100,000.00 on the auto occupied by plaintiff. The judgment against Aetna was limited to Aetna's policy limits of $500,000.00. American was decreed entitled to the full amount of its intervention. Defendant, Aetna, appealed. Plaintiff filed a protective devolutive appeal with respect to apportionment of costs in the event the trial court judgment should be modified so as to affect Aetna's liability for costs.
Plaintiff-appellee filed an answer to the appeal urging her entitlement to penalties and attorney's fees for Aetna's alleged arbitrary and capricious failure to pay the trial court judgment despite the decision in Capone v. King, 467 So.2d 574 (La.App. 5th Cir.1985), writ refused, 468 So.2d 1203 (La.1985), which appellee contends disposed of all issues of policy interpretation presented in the instant case adverse to Aetna. Aetna motioned this court to dismiss appellee's answer to the appeal urging that such relief was not sought in the trial court and is not, therefore, an issue presented by the record on appeal.

FACTS
Sharon F. Stewart, plaintiff, and Cathy St. Clair Loret were both employed by Universal. They were to travel to Little Rock, Arkansas, to participate in a fashion show as models for Universal. The fashion show was to be held on Sunday, June 22, 1980, and there was no work to be done on the show until approximately 6:00 p.m. on Saturday, June 21, 1980. Although Universal was providing transportation to Little Rock, Ms. Stewart and Ms. Loret sought and received permission from Ms. Margie Hannaman, president of Universal, to travel to the show in Ms. Loret's 1976 Volvo sedan.
After leaving Baton Rouge, Louisiana, at approximately 2:00 p.m. on Friday, June 20, 1980, the two women traveled directly to False River to visit a friend of Ms. Loret. After the visit, the Loret vehicle proceeded down Highway 190. Ms. Loret was the driver and Ms. Stewart was a passenger. The Loret vehicle was traveling north on Highway 190, approximately 20 miles north of the intersection of Highway 71 and Highway 190 near LeBeau, Louisiana, when it was struck head-on by a southbound 1974 Toyota driven by Susan H. Robinson, which was attempting a passing maneuver. The record establishes that Susan Robinson's fault was the sole cause of the accident. Ms. Stewart allegedly suffered a broken wrist and severe injuries to her right hip, pelvis, right leg and right foot.
On appeal, Aetna urges the following as error:
1. The trial court erred in holding that the policy of insurance issued by Aetna to Universal afforded uninsured motorist coverage to plaintiff.
2. The trial court erred in assessing interest against Aetna from the date on which Ms. Robinson was sued.
3. The trial court erred in fixing plaintiff's damages in the amount of $750,000.00.

THE COVERAGE ISSUE
Part 1 of the Aetna policy describes the meaning of the term "Insured" as follows:
"F. `Insured' means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to our limit of liability, the insurance afforded *1244 applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought."
Item 2 of the Aetna Business Auto policy sets forth the schedule of coverage as follows:

----------------------------------------------------------------------------------------------------------------------------------------------------------------
"ITEM TWO. SCHEDULE OF COVERAGES AND COVERED AUTOS  This policy provides only those coverages where a charge is shown in the advance premium column
below. Each of these coverages will apply to only those autos shown as covered autos. Autos are shown as covered autos for a particular coverage by the entry of
one or more of the symbols from ITEM THREE next to the name of the coverage. (SEE REVERSE FOR ITEM THREE)
----------------------------------------------------------------------------------------------------------------------------------------------------------------
 COVERED AUTOS LIMIT
 (Entry of one or more of the ADVANCE
 COVERAGES symbols from Item Three The Most We Will Pay For Any PREMIUM
 shows which autos are covered One Accident or Loss
 autos.)
----------------------------------------------------------------------------------------------------------------------------------------------------------------
 LIABILITY
 INSURANCE 2 $ 500,000 per accident 559.
 PERSONAL INJURY
PROTECTION (or equivalent Separately stated in endorsement.
No-Fault coverage)
 AUTO MEDICAL
PAYMENTS INSURANCE 2 $ 2,000 per insured 20.
UNINSURED MOTORISTS
 INSURANCE 2 $ 500,000 per accident 120.
-----------------------------------------------------------------------------------------------------------------------------------------------------------------

Item 3 of the Aetna policy sets forth a description of the covered automobiles designated by symbol, which reads in pertinent part as follows:
 "ITEM THREE  DESCRIPTION OF COVERED AUTOS DESIGNATION SYMBOLS
 SYMBOL DESCRIPTION
 1 = ANY AUTO. (Comprehensive Auto. Liability coverage)
 2 = OWNED AUTOS ONLY. Only those autos you own (and for liability
 coverage any trailers you don't own while attached to power units
 you own). This includes those autos whose ownership you acquire
 after the policy begins."
Item 4 of the Aetna policy specifically describes the vehicles owned by the named insured, Universal. The Loret vehicle is, of course, not described on this schedule.
The Aetna policy next sets forth in Item 6 an extension of liability coverage for automobiles borrowed from employees or members of their household, which item reads in pertinent part as follows:

ITEM SIX-SCHEDULE FOR EMPLOYERS' NON-OWNERSHIP LIABILITY
 (Covered Autos Borrowed From Your Employees or members of their households)
-------------------------------------------------------------------------------------------------------
 RATING BASIS - NUMBER OF EMPLOYEES
-------------------------------------------------------------------------------------------------------
 ESTIMATED NUMBER OF EMPLOYEES STATE TAX CLASS RRID TOV C'MeRp ADVANCE PREMIUM
 DIST CODE CODE
-------------------------------------------------------------------------------------------------------
 9
 IF ANY 17 1707 660100 0 99 23.
-------------------------------------------------------------------------------------------------------

There were two additional endorsements made to the Aetna policy at the time the policy was endorsed to extend liability coverage to automobiles borrowed from employees or members of their household. The two additional endorsements, CA 0015 and CC-5435, pertain to the designation of "WHO IS INSURED". In Endorsement CA 0015, the provisions on "WHO IS INSURED", for liability purposes, was changed to read, in pertinent part, as follows:
"D. WHO IS INSURED
*1245 1. You are an insured for any covered auto.
2. Anyone else is insured while using with your permission a covered auto you own, hire or borrow except:
a. Someone using a covered auto you hire or borrow from one of your employees or a member of his or her household."

Endorsement CC-5435 provides as follows:
"LIABILITY INSURANCE is changed as follows:
WHO IS INSURED is changed by adding the following:
Any partner or executive officer is an insured while using a covered auto you hire or borrow from one of your employees or a Member of his or her household while such auto is being used in your business."
Thus the Aetna policy, as endorsed, unambiguously provides liability coverage on automobiles borrowed from employees or members of their households, but only in favor of Universal and its partners or executive officers.
The uninsured motorist insurance endorsement in the Aetna policy sets forth who is an insured for UM purposes in pertinent part as follows:
"D. WHO IS INSURED
1. You or any family member.
2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
3. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured."
Appellant urges that the trial court manifestly erred in concluding that the Aetna policy afforded UM coverage to plaintiff. Appellant argues that the Aetna policy does not afford contractual UM coverage to plaintiff because she was not occupying a vehicle owned by Universal, a "covered auto", (Items 2, 3 and 4 of Aetna's policy) and there is no statutorily mandated UM coverage because Ms. Stewart is not an insured under the liability provisions of the policy insofar as an auto borrowed from an employee is concerned. On the other hand, as we understand appellee's opposing argument, she contends that she is an "insured" under the UM insurance provisions of the Aetna policy because at the time of accident she was occupying a "covered auto". Additionally, plaintiff contends that once a vehicle becomes a "covered auto" for purposes of liability, La.R.S. 22:1406(D)(1)(a) operates to mandate coextensive UM coverage. Stated another way, plaintiff contends that La.R.S. 22:1406(D)(1)(a) mandates that a vehicle covered for purposes of liability by a policy of insurance must likewise provide UM coverage for that vehicle and everyone using it.
We have carefully considered the issue presented and conclude, for the reasons which follow, that the trial court clearly erred when it determined that the Aetna policy affords UM coverage to plaintiff.
Although Aetna urges on appeal that the Loret vehicle was not a "borrowed auto", for purpose of discussion, we assume that the Loret vehicle was a "borrowed vehicle" within the purview of the Aetna policy.
The Aetna policy does not contractually provide UM insurance to Ms. Stewart. Part 1 of the policy describes an "insured" as an insured in the WHO IS INSURED section of the applicable insurance. The applicable insurance, UM coverage, describes an insured as the named insured and "[a]nyone else occupying a covered auto". Items 2, 3 and 4 of the Aetna policy unambiguously describe not only the meaning of the term "covered auto" but designate with particularity and with exact description each covered auto, in connection with the particular insurance coverages provided by the policy. By reference to Items 2 and 3, it unambiguously appears that the Aetna policy provides UM coverage only on autos owned by the named insured, Universal Productions. Since the vehicle occupied by plaintiff was not owned by Universal Productions, it necessarily follows that such vehicle is not a "covered auto" under the UM provisions of the Aetna *1246 policy. In sum, no contractual UM coverage is provided on the Loret vehicle and plaintiff can be considered an insured under the Aetna policy for UM protection only if La.R.S. 22:1406(D)(1)(a) mandates such coverage.
The Aetna policy provides no UM coverage on the Loret vehicle. The Aetna policy provided liability coverage on the Loret vehicle but only in favor of Universal, its partners and executive officers (Item 6; endorsements CA 0015 and CC 5435). The record establishes that the plaintiff, Ms. Stewart, was neither an executive officer nor partner of the named insured, Universal. As an "occupant" of the Loret vehicle, Ms. Stewart was "using" the vehicle. However, although using the Loret vehicle, plaintiff was not, while engaged in such use, an insured for purposes of liability under the Aetna policy.
Plaintiff contends, and the trial court presumably held, that once the Loret vehicle became a "covered vehicle" under the Aetna policy for purposes of liability, La.R.S. 22:1406(D)(1)(a) mandates coextensive UM coverage to the vehicle and everyone using it. We disagree.
La.R.S. 22:1406(D)(1)(a) reads in pertinent part as follows:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto." (Emphasis ours).
A careful reading of La.R.S. 22:1406(D)(1)(a) indicates that the statute mandates UM coverage for the protection of persons who are insured for purposes of liability under an automobile liability insurance policy. Our Supreme Court so held in Seaton v. Kelly, 339 So.2d 731 (La.1976), stating:
"The issue here is not whether plaintiff can "stack" the uninsured motorist coverages on the two policies issued to Kelly. The question of "stacking" only arises once it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an insured under the terms of those policies. The mandatory uninsured motorist coverage of R.S. 22:1406(D)(1)(a) provides in part:
'No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting *1247 therefrom; ...' (Emphasis added).

Graham [v. American Casualty Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972)] and Deane [v. McGee, 261 La. 686, 260 So.2d 669 (1972) ] supra, stand for the proposition that the uninsured motorist statute embodies public policy and, thus, any clause in derogation of the mandatory requirements set forth in the statute is invalid insofar as it conflicts therewith. However, R.S. 22:1406 requires that insurance policies provide uninsured motorist coverage only for persons insured under the policy. The clear intent of Graham and Deane is that if a plaintiff is an insured under two or more policies or one policy covering two or more automobiles, pays premiums or has premiums paid for his benefit for two or more different uninsured motorist coverages, he can cumulate the coverages." (Emphasis ours).
The holding in Seaton has been consistently followed by the courts of this state such that in Robertson v. Cumis Insurance Co., 355 So.2d 1371 (La.App. 3rd Cir.1978), writ denied, 357 So.2d 1153 (La.1978), we observed:
"To begin with, we note that in order for one to be insured under the `uninsured' and `underinsured' provisions he must first be insured under the liability provisions. This seems to be so well established that we do not feel it requires further comment. See: Seaton v. Kelly, 339 So.2d 731 (La.1976)."
In support of her argument to the contrary, plaintiff relies on Capone v. King, 467 So.2d 574 (La.App. 5th Cir.1985), writs denied, 468 So.2d 1203, 1205 (La.1985), for the proposition that one need not be an insured under the liability provisions of the policy before La.R.S. 22:1406(D)(1)(a) can operate to mandate UM coverage in favor of that person. There, plaintiff, Ms. Capone, was a guest passenger in an automobile owned and driven by Ms. Coffer during the course and scope of her employment with Mall Advertising. The Coffer vehicle was struck by an automobile owned by King. King had no liability insurance on his car. The Coffer vehicle was insured by Aetna under a policy issued to Mall which provided liability coverage of $500,000.00. The court concluded that since the Coffer vehicle was covered for liability purposes under the Aetna policy, La.R.S. 22:1406 required coextensive UM coverage on the Coffer vehicle. The court permitted plaintiff to recover despite assertions by Aetna that statutory UM coverage was not available under the policy for Ms. Capone because the policy only protected the corporate insured against liability and did not protect persons per se. The court reasoned that such a policy, by its nature, was meant to "protect persons such as Ms. Capone who were injured by uninsured motorists". The opinion is silent as to all the necessary information regarding liability coverage under the policy, i.e., who was an insured under the liability provisions of the Aetna policy. We agree with the following succinct analysis of the court's conclusion in Capone by two of Louisiana's premiere scholars in the field of insurance law:
"The result in Capone v. King, 467 So.2d 574 (La.App. 5th Cir.1985), writ denied 468 So.2d 1203, 1205 (1985) may be inconsistent with the principle that UM coverage is mandatory only for persons who are liability insureds under the automobile liability policy, although the opinion does not disclose all necessary information about the liability coverage. The plaintiff was a guest passenger in an automobile owned and driven by Coffer in the course of her employment by Mall. The issue was whether the liability insurers providing non-owned automobile liability coverage to Mall were required, in absence of an effective waiver, to provide UM coverage to the plaintiff. The court held that they were so obligated. The court, however, did not focus on who was insured under the non-owned coverage. If liability coverage was extended only to Mall and not to the operator and other users of the vehicle, then there should be no mandatory obligation to afford UM coverage to such occupants who are not liability insureds."
McKenzie and Johnson, Louisiana Civil Law Treatise: "Insurance Law and Practice", *1248 § 102, n. 18 (1986). See also Babin v. State Farm Mutual Automobile Insurance Company, 504 So.2d 558 (La.App. 1st Cir.1987), writ denied, 504 So.2d 877 (La. 1987).
To the extent that Capone concludes that UM coverage is statutorily mandated in favor of persons who are not insureds under the liability provisions of the policy, we disagree. Although our Supreme Court denied writs in Capone, we observe that a denial of a writ of certiorari neither constitutes an approval of the court of appeal's decision nor does it create precedent. White v. Louisiana Western Ry. Co., 174 La. 308, 140 So. 486 (La.1932); Liedtke v. Allstate Ins. Co., 405 So.2d 859 (La.App. 3rd Cir.1981), writ denied, 407 So. 2d 748 (La.1981); Hebert v. Breaux, 398 So.2d 1299 (La.App. 3rd Cir.1981), writ denied, 401 So.2d 986 (La.1981).
In sum, we determine that the Aetna policy provides no contractual UM coverage for non-owned vehicles, specifically vehicles hired or borrowed from Universal's employees. However, since an auto hired or borrowed from an employee is a "covered auto" for purposes of liability, coextensive UM coverage is statutorily mandated by La.R.S. 22:1406(D)(1)(a) but only in favor of those insured under the liability provisions of the Aetna policy, i.e., the partners or executive officers of Universal. Since plaintiff is not a partner or executive officer of Universal, she is not an insured under the Aetna policy for purposes of liability and, therefore, UM coverage for her protection while using the Loret vehicle was not statutorily mandated. The trial court clearly erred in deciding to the contrary. Our conclusion in this regard renders Aetna's other assignments of error and the issue raised by plaintiff's answer to the appeal moot.
For the above and foregoing reasons, the judgment of the trial court is reversed and set aside insofar as it casts The Aetna Casualty and Surety Company in judgment and, in this connection, it is ordered that plaintiff's demands and those of American Mutual Liability Insurance Company against The Aetna Casualty and Surety Company are dismissed with prejudice. In all other respects the judgment of the trial court is affirmed except that Dairyland Insurance Company is cast with all costs at the trial level. Plaintiff-appellee is cast with all costs of this appeal.
REVERSED IN PART AND AFFIRMED IN PART.