550 So.2d 859 (1989)
Mary H. BENTON, Plaintiff-Appellant,
v.
LONG MANUFACTURING N.C., INC., et al., Defendant-Appellee.
No. 20768-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
A. Richard Snell, Bossier City, for plaintiff-appellant, Mary H. Benton.
Nelson & Achee, Ltd. by James S. Denhollem, Shreveport, for defendant-appellee, Century Indem. Co.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
SEXTON, Judge.
Plaintiff appeals the granting of a partial summary judgment in favor of defendant-appellee, excess insurer Century Indemnity Company, exempting it from coverage of the first $1 million of the plaintiff's demands. We affirm.
This lawsuit arises out of an industrial accident on August 27, 1985, in which Clifton D. Benton, husband of plaintiff Mary H. Benton, was killed. Mrs. Benton filed the present wrongful death action against Long Manufacturing N.C., Inc., the manufacturer of a tractor which allegedly caused Mr. Benton's death. She later added as defendants American Mutual Liability Insurance Company (American Mutual), the bodily injury liability insurer of Long *860 Manufacturing, and Century Indemnity Company (Century), which had an umbrella liability policy in effect with Long Manufacturing.
The American Mutual policy, which was issued for the period from November 1, 1984, to November 1, 1985, initially contained bodily injury and property damage limits of $1 million for each occurrence, the required underlying coverage under Long Manufacturing's insurance contract with Century. However, on June 19, 1985, Long Manufacturing unilaterally reduced the limits of the American Mutual policy to $100,000.
Century had in effect with Long Manufacturing at the time of the accident an umbrella liability policy which afforded $5 million in bodily injury liability coverage for damages in excess of the $1 million original limit of the American Mutual policy. The reduction of the limits of the American Mutual policy thus left a $900,000 gap between the primary coverage and the beginning point of Century's excess coverage.
On September 16, 1988, Century filed a motion for partial summary judgment relieving it from liability for the first $1 million of Mrs. Benton's demands. This motion was granted on October 11, 1988, for reasons orally assigned. Mrs. Benton now appeals the granting of this partial summary judgment.
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; State, Through Department of Highways v. City of Pineville, 403 So.2d 49 (La.1981); Swindle v. Haughton Wood Co., Inc., 458 So.2d 992 (La.App. 2d Cir.1984); Jones v. Prudential Insurance Company of America, 415 So.2d 223 (La.App. 2d Cir.1982). The burden of proof in a motion for summary judgment is on the mover to establish that there are no genuine issues of material fact. This burden is a great one. Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubt should be resolved in favor of a trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La. 1980); Swindle v. Haughton Wood Co., Inc., supra; Jones v. Prudential Insurance Company of America, supra.
On appeal, plaintiff contends that Century's policy language is ambiguous and that, when read in the light most favorable to the insured, the policy provides "drop down" coverage in the event that the underlying policy limits are reduced and that reduced amount is paid.
An insurance policy is a contract, and the rules established for the construction of written instruments apply to contracts of insurance. Stanley v. Cryer Drilling Co., 213 La. 980, 36 So.2d 9 (1948); Dean v. Union National Fire Insurance Co., 301 So.2d 925 (La.App. 2d Cir. 1974). The Louisiana Civil Code defines interpretation of a contract as "the determination of the common intent of the parties." LSA-C.C. Art. 2045. Thus, the prime consideration in the interpretation of an insurance policy is to ascertain the true intention of the parties from the language of the policy as a whole. Harvey v. Mr. Lynn's Inc., 416 So.2d 960 (La.App. 2d Cir.1982). As in the case of other written agreements, the terms and provisions of an insurance contract are construed in their general and popular meaning. Nida v. State Farm Fire and Casualty Co., 454 So.2d 328 (La. App. 3rd Cir.1984), writ denied, 458 So.2d 486 (La.1984). An insurance contract should not be given an interpretation which would enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. Zurich Insurance Co. v. Bouler, 198 So.2d 129 (La.App. 1st Cir. 1967). Absent a conflict with law or public policy, insurers are entitled to limit their liability and obligations in a given policy. Fruge v. First Continental Life and Accident Insurance Co., 430 So.2d 1072 (La.App. 4th Cir.1983), writ denied, 438 So.2d 573 (La. 1983).
*861 The Century policy specifies the underlying limits of its liability with the following language:
LIMIT OF LIABILITY The company shall only be liable for the ultimate net loss the excess of either
(a) the amount recoverable[1] under the underlying insurances as set out in Item 7 of the Declarations, or
(b) the amount of the retained limit stated in Item 4 of the Declarations in respect of each occurrence not covered by said underlying insurances.
Because the occurrence at issue here (the accident) was covered by the underlying American Mutual policy, subsection (a) of the limit of liability section is applicable. This subsection specifically refers to the underlying insurance set out in Item 7 of the declarations of the Century policy. Item 7, entitled "Schedule of Underlying Insurance Policies," also clearly shows the underlying comprehensive general liability limits for bodily injury and property damage to be $1 million for each occurrence.
Therefore, according to the general and popular meaning of the words, the intent of the parties to the contract (Long Manufacturing and Century) appears to us to be that Long Manufacturing would maintain underlying insurance with American Mutual for bodily injury liability claims of up to $1 million, with any claims over that amount and up to $5 million being covered by Century. We do not see any indication that Century intended to "drop down" and cover any claims against Long Manufacturing for over $100,000 simply because Long Manufacturing unilaterally decided to renew its underlying policy with American Mutual to cover only claims against it up to $100,000.
This interpretation of an excess insurer's intent is supported by the First Circuit in Coates v. Northlake Oil Co., Inc., 499 So.2d 252 (La.App. 1st Cir.1986), writ denied, 503 So.2d 476 (La.1987). In Coates, the policy language of the excess insurer, Sentry, read as follows:
B. Underlying Limit; Retained Limit: We shall be liable only for "net loss" resulting from any one occurrence in excess of either
1. the amounts of the applicable limits of liability of the underlying insurance as stated in the Declarations less the amount, if any, which any aggregate limit of such insurance has been reduced by payment of loss, or
2. if the insurance afforded by underlying insurance is inapplicable to the occurrence, the amount stated in the Declarations as the retained limit.
The underlying limit of Sentry's policy was $500,000. However, the insured involved failed to secure underlying insurance of any kind. The court, after examining the underlying policies of the other defendants in that case who also had excess coverage with Sentry, found that the accident would have been covered by an underlying policy had this particular insured obtained one. The court went on to hold that the trial court's interpretation of the umbrella policy to provide primary coverage when the insured had failed to secure underlying coverage was clearly wrong, and that the only reasonable intent of the parties to the insurance contract as evidenced by the policy language was that Sentry's umbrella policy covered only those claims of the plaintiff in excess of $500,000, despite there being no underlying policy. The insured was thus held liable for the plaintiff's claims up to this underlying limit.[2]
*862 Century's policy also contains the following provision concerning maintenance of underlying insurances:
MAINTENANCE OF UNDERLYING INSURANCES. It is a condition of this policy that the underlying insurances as set out in Item 7 of the Declarations shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits applicable thereto solely by payment of claims in respect of occurrences occurring during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure the Company shall only be liable to the same extent as it would have been had the Insured complied.
Clearly, this provision deals with the insured's duty to maintain the underlying insurance policies as set out in Item 7 of the declarations, i.e., up to the $1 million limit.
We were unable to locate any Louisiana cases discussing this type of maintenance clause in a situation where the insured had unilaterally reduced its primary coverage. However, the instant fact situation was considered by the California Supreme Court in Reserve Insurance Co. v. Pisciotta, 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764 (1982). The excess policy in that case, issued by CNA, also provided for coverage in excess of "the amount recoverable under the underlying insurance as set out in the schedule of the underlying insurance." The underlying insurance listed in the schedule was a policy issued by USF & G covering claims of up to $300,000 per occurrence. The insured decided to let this underlying policy lapse, however, later obtaining replacement primary coverage with Reserve Insurance Co. (Reserve) for only $100,000 per occurrence, which coverage took effect the day of the plaintiff's injury.
CNA's policy contained a maintenance clause similar to that in the instant case which read as follows:
The policy or policies referred to in the "Schedule of the Underlying Insurance," and renewals or replacements thereof not more restrictive, shall be maintained by the Named Insured without alteration of terms or conditions in full effect during the currency of this Section II.... Failure of the Named Insured to comply with the foregoing shall not invalidate this Section II but, in the event of such failure, the Company shall only be liable to the same extent had the named Insured complied with this condition.
Reserve Insurance Co. v. Pisciotta, supra, n. 5.
The court held that the insured had breached the maintenance clause of the CNA policy by obtaining a replacement policy with a lower limit than that of the original primary policy, noting:
The plain import of the maintenance clause is that CNA refuses to allow the insured to expand the scope of CNA's exposure by replacing the original primary policy with a second policy containing a narrower scope of coverage. Pisciotta's failure to comply with the maintenance clause created a gap in coverage between his primary and excess policies. Thus CNA is not responsible for any liabilities of Pisciotta between $100,000 and $300,000.
Reserve Insurance Co. v. Pisciotta, 640 P.2d at 771.
We agree with the analysis of the California court. Although Century's maintenance clause does not contain language prohibiting "renewals or replacements more restrictive," it does provide that the underlying insurance must be maintained as set out in Item 7 of its declarations. Item 7 requires that the underlying bodily injury limit be $1 million, not $100,000. The maintenance clause also provides that the insured's failure to maintain the required underlying insuranceresulting in a breach of the maintenance clausewill cause Century to be liable only to the extent it would have been had the insured *863 complied with the maintenance clause, i.e., only above $1 million in damage claims against the insured. We conclude that the clear and unambiguous import of the policy language is that the insured may not unilaterally reduce its primary coverage and expect the excess insurer to "fill the gap."
Appellant also cites a final provision of the Century policy which she claims is ambiguous and, as such, should be construed against the insurer, requiring Century to provide "drop down" coverage over Long Manufacturing's reduced primary coverage:
In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of payment of claims in respect of occurrences occurring during the period of this policy, this policy, subject to all the terms, conditions and definitions hereof, shall
(1) in the event of reduction pay the excess of the reduced underlying limit;
(2) in the event of exhaustion continue in force as underlying insurance.
Appellant contends that this language must be read to make Century pay the excess of the "reduced" underlying limit, which she claims was reduced as required by Century's policy by payment by American Mutual of that $100,000 to herself in settlement of her claims. We disagree.
It is well established that ambiguous insurance policy provisions are to be construed against the insurer so as to extend coverage to the insured. Insurance Company of North America v. Solari Parking, Inc., 370 So.2d 503 (La.1979); Credeur v. Luke, 368 So.2d 1030 (La.1979); 70th Street Food Store, Inc. v. Northeastern Fire Insurance Co., 408 So.2d 958 (La.App. 2d Cir.1981). However, an insurance policy must also be interpreted in its entirety. Harvey v. Mr. Lynn's Inc., supra. We find that the above-quoted provision, when read in conjunction with the maintenance clause language requiring the underlying insurance to be maintained as set out in Item 7 of the declarations "except for any reduction of the aggregate limit or limits applicable thereto solely by payment of claims" (emphasis added), causes the policy not to be ambiguous at all. The policy dictates that the aggregate limits of underlying insurers may be reduced or exhausted in one way only: by payment of claims under those policies.
The Fifth Circuit, in Mission National Insurance Co. v. Duke Transportation, Inc., 792 F.2d 550 (5th Cir.1986), interpreted similar policy language in the same way. In Mission, the insurance contract at issue read as follows:
In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this policy subject to all the terms, conditions and definitions hereof shall
(1) in the event of reduction pay the excess of the reduced underlying limit
(2) in the event of exhaustion continue in force as underlying insurance.
The insured in that case claimed that, because of the primary insurer's insolvency, the limits of the underlying policy had been "exhausted," causing the excess insurer's policy to continue in force as the underlying insurance. The court disagreed, holding that the phrase "by reason of losses paid thereunder" required the excess insurer to function as the underlying insurer only when the exhaustion occurred by reason of losses paid under the policy.
Similarly, the Century policy requires in two separate provisions that reduction or exhaustion of the underlying limits can only occur by payment of claims by the underlying insurers. There is no policy provision that allows the insured to unilaterally reduce its underlying policy limits, have the underlying insurer pay the reduced amount, and claim that the reduction occurred solely by reason of payment of claims. The unilateral reduction of the underlying policy limits is not a reduction by reason of payment of claims. It is instead a breach by Long Manufacturing of its contract of insurance with Century.
For the reasons stated above, we affirm the judgment of the trial court that Century is not liable for the plaintiff's claims against Long Manufacturing below American *864 Mutual's original $1 million underlying policy limits. The costs of this appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] We note that the interpretation of the "recoverable" amount in the case of an insolvent underlying insurer is not at issue in this case. See Mission National Insurance Co. v. Duke Transportation Co., Inc., 792 F.2d 550 (5th Cir.1986); McGuire v. Davis Truck Services, Inc., 518 So.2d 1171 (La.App. 5th Cir.1988), writ denied, 526 So.2d 791 (La.1988); Reserve Insurance Co. v. Pisciotta, 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764 (1982), for discussions of the interpretation of "recoverable" in an insolvency situation.
[2] Much jurisprudence also supports the proposition that reduced premiums show the intent of the parties to an excess insurance contract that coverage attaches only after a predetermined amount of primary coverage has been exhausted. See Steve D. Thompson Trucking, Inc. v. Twin City Fire Insurance Co., 832 F.2d 309 (5th Cir.1987); Continental Marble & Granite v. Canal Insurance Co., 785 F.2d 1258 (5th Cir.1986); Coates v. Northlake Oil Co., Inc., supra. This opinion is not based on that proposition, however, because the record is devoid of any indicia of the significance of Century's $82,000 premium as being a "reduced" premium.