568 So.2d 1119 (1990)
Lynn Ann PLAISANCE & Lumbermen Mutual Casualty Company, a Division of the Kemper Group, and United Services Automobile Association (Intervenor), Plaintiff and Appellant (Plaisance) Appellees (Lumbermen & United),
v.
Florence A. FOGG, Montgomery Ward Insurance Company & United Services Automobile Association & Lumbermen Mutual Casualty Company, Defendants-Appellees.
No. 89-371.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Writ Denied January 4, 1991.
*1120 David L. Colvin, Gretna, for plaintiff/appellant.
Jeansonne & Briney, Katherine M. Loos, Lafayette, Dauzat, Falgoust, Caviness & Bienvenu, Jerry J. Falgoust, Opelousas, Allen & Gooch, Joel E. Gooch, Lafayette, for defendants/appellees.
Before DOMENGEAUX, C.J., and FORET and KNOLL, JJ.
KNOLL, Judge.
Plaintiff, Lynn Ann Plaisance, appeals the adverse decision of the trial court granting the defendant's, Lumbermen Mutual Casualty Company (Lumbermen), motion for summary judgment on the issue of underinsured/uninsured motorist (UM) coverage.

FACTS
On July 25, 1986, Plaisance was seriously injured in an automobile accident when her vehicle, a 1984 Ford Mustang, collided with an automobile being driven by its owner, Florence A. Fogg. At the time of the accident, Plaisance was employed by Huey Henry Breaux, an attorney, and was acting in the course and scope of her employment.[1]
Plaisance filed this suit for damages naming as defendants, Fogg, Montgomery Ward Insurance Company (Fogg's automobile insurer) and United Services Automobile Association (USAA), Plaisance's UM carrier. After some initial discovery, Lumbermen filed its petition of intervention for worker's compensation benefits and medical expenses paid to and on behalf of Plaisance. Plaisance filed a supplemental and *1121 amending petition naming Lumbermen as her UM insurer under a "Business Auto Policy" issued to Breaux.
After Plaisance prevailed in a concursus proceeding and received the $100,000 policy limits of UM coverage from USAA, Lumbermen filed a motion for summary judgment contending that Plaisance was excluded from UM coverage under their policy. Plaisance filed a motion for summary judgment contending that she was afforded UM protection under the Lumbermen policy.
After reviewing the language of the Business Auto Policy, the trial court granted Lumbermen's motion for summary judgment. In its reasons for judgment, the learned trial court stated:
"`Part I of Lumbermen's policy reads, "Insured" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance.' Part IV (Liability Insurance), section D.2. defines as WHO IS INSURED the following:
`1. You are an insured for any covered auto.

2. Anyone else is an insured while using with your permission a covered auto you own, hire, or borrow except:
a. The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.'
Lumbermen's [sic] argues that the recent case of Stewart v. Robinson, [521 So.2d 1241] 87-3 Ct.App. 3rd Cir., Louisiana, March 1988, applies. The Court agrees.
First, Lumbermen's policy in this case does not provide for contractual UM coverage. Secondly, Part I of the policy defines an `insured' as being those listed in the WHO IS INSURED section of the applicable insurance. The applicable insurance, UM coverage, describes an insured as the named insured and `[a]nyone else occupying a covered auto....' (See endorsement CA 2x 17, section D.2.)
Items 2, 3 and 4 describe and designate the covered automobile and the particular insurance coverage applicable to it. Only those autos specifically described and designated are covered for UM coverage. The plaintiff's auto is not described or designated. Only those autos owned by the insured are described or designated. Item 6 lists coverage for employees' automobiles, but this is only for liability purpose [sic]. Therefore, there is no contractual UM coverage.
Second, there is no mandated UM coverage under La.R.S. 22:1406(D)(1)(a). Although Lumbermen's policy does provide liability coverage on the plaintiff's vehicle, per Item 6 as previously noted, this coverage is limited. In Stewart, cited above, the only insured under these conditions were partners and executive officers. In this case, the only insured are non-owners as provided in Part IV D.2. of the policy.
The court in Stewart makes implicit that the language defining WHO IS INSURED in the UM endorsement does not expand the definition of WHO IS INSURED under liability coverage.
Therefore, although the plaintiff's vehicle became a covered vehicle under Lumbermen's policy for purposes of liability, according to Stewart and the other cases it cites, it is clear that UM coverage is mandated under 22:1406(D)(1)(a) only to those persons who are insured for the purposes of liability under the policy. To be the occupant of a covered automobile is not enough for co-extensive coverage. Thus, since plaintiff as owner of the vehicle in question is not an insured for liability purposes, she can not be co-extensively insured for UM coverage under R.S. 22:1406(D)(1)(a)."
In this appeal, Plaisance contends the trial court erred in: (1) failing to find contractual UM coverage; and (2) failing to find statutorily mandated UM coverage.

THE COVERAGE ISSUE
The granting of a motion for summary judgment is appropriate only if the pleadings, depositions, admissions on file, together with any affidavits filed, show that there is no genuine issue of material fact and that the mover is entitled to a judgment as a matter of law. Finley v. Safeco *1122 Ins. Co., 511 So.2d 457 (La.App. 3rd Cir. 1987).
The purpose of this procedural tool is to cut through the meaningless and unsupported allegations, thus getting to the heart of the issues before a trial court and allowing an expedited judgment, if worthy of such. Simon v. Fasig-Tipton Co. of New York, 524 So.2d 788 (La.App. 3rd Cir. 1988), writs denied, 525 So.2d 1048, 1049 (La.1988).
The summary procedure should be used cautiously and sparingly and any reasonable doubt should be resolved against the mover and in favor of a full trial on the merits. Riviere v. Bethard, 422 So.2d 1341 (La.App. 3rd Cir.1982).
Under the jurisprudence regarding the interpretation of insurance contracts, ambiguities in an insurance contract must be resolved according to the general rules governing contract interpretation. Albritton v. Fireman's Fund Ins. Co., 224 La. 522, 70 So.2d 111 (1953). Unless ambiguous, words in an insurance contract will be given their commonly prevailing meaning. La.-C.C. Art. 2047; Breland v. Schilling, 550 So.2d 609 (La.1989). Absent a conflict with law or public policy, insurers are entitled to limit their liability and obligations in a given policy. Benton v. Long Mfg. N.C., Inc., 550 So.2d 859 (La.App. 2nd Cir.1989).
Part I of the policy defines an "Insured" as follows:
"F. `Insured' means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to our limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought."
The policy defines "Who is Insured" for liability insurance purposes as follows:
"Part IV D. WHO IS INSURED.
1. You are an insured for any covered auto.
2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except:
a. The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household."
For UM coverage, the endorsement defines "Who is Insured" as follows:
"D. WHO IS INSURED
1. You or any family member.
2. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
3. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured."
Part II of the policy limits the covered autos as follows:
"A. ITEM TWO of the declarations shows the autos that are covered autos for each of your coverages. The numerical symbols explained in ITEM THREE of the declarations describe which autos are covered autos. The symbols entered next to a coverage designate the only autos that are covered autos."
A "covered auto" is defined in Items 2 and 3 which provide:
"ITEM TWOSCHEDULE OF COVERAGES AND COVERED AUTOS
EACH OF THESE COVERAGES WILL APPLY ONLY TO THOSE AUTOS SHOWN AS COVERED AUTOS. AUTOS ARE SHOWN AS COVERED AUTOS FOR A PARTICULAR COVERAGE BY THE ENTRY OF ONE OR MORE OF THE SYMBOLS FROM ITEM THREE NEXT TO THE NAME OF THE COVERAGE.

COVERAGES COVERED AUTOS
LIABILITY INSURANCE 07
UNINSURED MOTORISTS 07

ITEM THREESEE ATTACHED FORM FOR DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS
* * * * * *
Item Three DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS
* * * * * *
SYMBOL DESCRIPTION
7 = SPECIFICALLY DESCRIBED AUTOS.

*1123 Only those autos described in Item Four for which a premium charge is shown (and for liability coverage any trailers you don't own while attached to any power unit described in Item Four.)"
Item 4 specifically lists the vehicle(s) which are "covered autos". Plaisance's vehicle is not a "covered auto".
Items 5 and 6, respectively, provide liability coverage for rented or leased vehicles and automobiles borrowed from employees. The provisions provide:
"ITEM FIVESCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS LIABILITY INSURANCERATING BASIS, COST OF HIRE ...
COST OF HIRE MEANS THE TOTAL AMOUNT YOU INCUR FOR THE HIRE OF AUTOS YOU DO NOT OWN (NOT INCLUDING AUTOS YOU BORROW OR RENT FROM YOUR EMPLOYEES OR THEIR FAMILY MEMBERS). COST OF HIRE DOES NOT INCLUDE CHARGES FOR SERVICES PERFORMED BY MOTOR CARRIERS OF PROPERTY OR PASSENGERS.
* * * * * *
ITEM SIXSCHEDULE FOR NON-OWNERSHIP LIABILITY COVERED AUTOS BORROWED FROM YOUR EMPLOYEES OR MEMBERS OF THEIR HOUSEHOLDS
RATING BASIS-NUMBER OF EMPLOYEES
ESTIMATED NUMBER OF EMPLOYEES 01
LIABILITY PREMIUM $25"
A review of the policy reveals that Plaisance is not afforded contractual UM coverage. The policy defines an "insured" as anyone who qualifies under the "WHO IS INSURED" section of the applicable insurance. Under the UM endorsement, an insured is the named insured and anyone else occupying a covered auto. According to Items 2, 3 and 4, the only covered auto is the automobile leased by Breaux, a 1978 Ford pickup. The Plaisance vehicle is not listed as a covered auto for UM purposes. Therefore, since Plaisance is not an "insured" and was not occupying a "covered auto" at the time of the accident, we must conclude that she is afforded no contractual UM coverage.
Plaisance contends that Item 6 which extends liability coverage to vehicles borrowed from employees also expands the definition of a "covered auto" for the UM provisions. In other words, the term "covered auto" must apply uniformly to both the liability and UM sections of the policy. Therefore, expanding the definition of a "covered auto" for liability purposes to include borrowed vehicles from employees likewise expands the term for UM coverage. Under this argument, Plaisance is an "insured" since she was occupying a "covered auto" at the time of the accident. We disagree.
The policy provides only liability coverage to an employee's automobile borrowed by the employer, Breaux. Thus, Breaux is assured by contract that the borrowed automobiles are protected with adequate liability insurance should an accident happen. This insurance protects Breaux from potential tort claims by third parties in the event of an accident. This extension of liability insurance to borrowed automobiles should not be interpreted as expanding the definition of an "insured" for UM purposes. There is no need for Breaux to insure himself against potential tort claims by employees since they are limited to worker's compensation benefits.
Additionally, adopting a piecemeal approach of contract interpretation is counter to the jurisprudence and would not reflect the true intentions of the contracting parties. By the language of the entire contract, the parties intended to provide liability coverage to borrowed automobiles but not provide UM coverage to persons occupying those automobiles.
Alternatively, Plaisance contends the trial court erred in failing to find statutorily mandated UM coverage. She argues: 1) that she is an "insured" under the liability policy provisions and, therefore, UM coverage is mandatory by statute; 2) that since *1124 her vehicle was covered with liability insurance, any tort which she committed was insured and, therefore, she was an "insured" thereby mandating UM coverage; and 3) that the clause in the liability section which excludes her from being an "insured" because she is the owner of the borrowed auto is contrary to LSA-R.S. 22:1406 and is void.
LSA-R.S. 22:1406 D(1)(a)(i) provides in pertinent part:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates." (Emphasis added.)
The statute mandates UM coverage for persons who are "insureds" under an automobile liability insurance policy. Stewart v. Robinson, 521 So.2d 1241 (La.App. 3rd Cir.), writ granted, 526 So.2d 785 (La.1988), case dismissed, unreported decision (Nov. 1988). However, one must be an "insured" under the liability provisions before the statute requires UM coverage. Robertson v. Cumis Ins. Co., 355 So.2d 1371 (La.App. 3rd Cir.1978), writ denied, 357 So.2d 1153 (La.1978).
The Lumbermen policy does not list Plaisance as an "insured" nor does she qualify as an "insured". The only insured named in the policy is Breaux. Furthermore, Plaisance is specifically excluded from the definition of "insured" in the liability section because she is the owner of the covered automobile borrowed by Breaux [Part IV D(2)(a) ]. Succinctly stated, the "apparent purpose of such limitation is to provide the named insured [Breaux] protection for liability arising out of the use of such vehicles, but to preclude coverage for the owner [Plaisance] who should have provided liability coverage for... [her] own vehicle." McKenzie and Johnson, Louisiana Civil Law Treatise: "Insurance Law and Practice", Section 58, p. 145 (1986). The language of the insurance policy is unambiguous and must be honored.
Also, we do not agree with the blanket rule espoused by Plaisance that anyone operating a motor vehicle covered with liability insurance is automatically an "insured" thereby mandating UM coverage. First, Plaisance offers no legal authority in support of her contention. Secondly, adopting such a hard and fast rule would derogate from the language of the insurance contract. It is the Plaisance vehicle which is insured under the Lumbermen policy rather than Plaisance.
Lastly, Plaisance contends that the language contained in the liability section which excludes her as an "insured" is in conflict with the statutory language of LSA-R.S. 22:1406 and is unenforceable. We disagree.
As this Court stated in Tate v. Hanover Ins. Co., 526 So.2d 1302 (La.App. 3rd Cir. 1988), writ denied, 530 So.2d 569 (La.1988), "[T]he named party exclusion is well recognized in the insurance industry and is not contrary to public policy." In Tate, we concluded that an employer's exclusion of an employee from its automobile liability *1125 insurance policy was not violative of public policy and was a matter of contractual agreement between the parties.
In the case sub judice, the contracting parties chose to exclude from liability coverage the owner of an automobile borrowed from an employee. In other words, when Plaisance used her own vehicle at her employer's request, she was specifically excluded from liability coverage. LSA-R.S. 22:1406 applies only to "insureds" and pertains to uninsured motorist coverage. The statute does not prohibit contracting parties from excluding certain persons from liability insurance coverage.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Plaisance.
AFFIRMED.
NOTES
[1] Despite Lumbermen's contention to the contrary, we conclude that Plaisance was acting in the course and scope of her employment when the accident occurred since Lumbermen's own petition of intervention as Plaisance's worker's compensation carrier alleges that she was in the course and scope of her employment when the accident occurred. Such a confession is a judicial admission and Lumbermen cannot later take a contrary position. Faustina Pipe Line Co. v. Bernard, 458 So.2d 981 (La.App. 3rd Cir. 1984), writ denied, 462 So.2d 1249 (La.1985).