584 So.2d 715 (1991)
Waco D. BAYS, III and Carolyn W. Bays
v.
The ESTATE OF Brian ZERINGUE, et als.
No. 91-CA-155.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 1991.
Rehearing Denied September 17, 1991.
*716 Robert I. Siegel, Paula L. Marcello, Hoffman, Sutterfield, Ensenat & Bankston, New Orleans, for defendant-appellant, American Home Assur. Co.
Louis C. LaCour, Jr., John W. Lindner, II, Adams & Reese, New Orleans, for defendants-appellants, Nat. Union Fire Ins. Co.
Gary M. Hellman, Messina & Hellman, New Orleans, for plaintiffs-appellees, Waco D. Bays, III and Carolyn W. Bays.
Before BOWES and DUFRESNE, JJ., and FINK, J. Pro Tem.
BOWES, Judge.
Defendants, American Home Assurance Company (hereinafter "American") and National Union Fire Insurance Company (hereinafter "National") appeal a declaratory judgment finding that their insurance policies provided uninsured/under-insured motorist coverage to the plaintiffs, Waco D. Bays, III and Carolyn Bays. We affirm for the following reasons.

FACTS AND PROCEDURAL HISTORY
The pertinent facts of the case were stipulated to at the trial of the motion for declaratory relief and are as follows:
"1. On October 30, 1988 at approximately 5:34 a.m., an automobile accident occurred in Louisiana between two vehicles, one operated by the plaintiff, Waco D. Bays, III and the other by Brian J. Zeringue.
2. At the time of the accident Mr. Bays was employed by Total Minatome Corporation and was in the course and scope of his employment with said employer.
3. At the time of the aforementioned accident, Waco D. Bays, III was a resident of the State of Louisiana.
4. National Union Fire Insurance Company issued two (2) business auto policies of insurance to Total Energy Resources, Inc. (including Total Minatome Corporation) Policy Nos. BAR540-8403RA and TA540-8402RA, with inception dates of May 1, 1988 and a termination date of May 1, 1989.
* * * * * *
5. American Home Assurance Corporation issued a combined risk insurance package to Total Energy Resources, Inc. and/or Total Minatome Corporation and/or associated and/or subsidiaries, Policy No. 101886, with an inception date of January 1, 1988 and a termination date of January 1, 1989.
* * * * * *
6. All of the insurance policies described more fully in stipulations Nos. 4 and 5 were issued for and received by Total Energy Resources, Inc. at their headquarters in Houston, Texas.
7. At all times relevant herein, the vehicle driven by Mr. Bays at the time of the accident was owned by him and was not specifically listed on the schedule of any of the policies referred to in stipulations Nos. 4 and 5.

*717 8. At all times relevant herein, the vehicle driven by Mr. Bays at the time of the accident was kept in Louisiana.
9. It is alleged by Mr. Bays that he was injured in the aforementioned accident and that Mr. Zeringue's conduct immediately prior to the accident constituted negligence, which negligence was the proximate cause of Mr. Bays' injuries.
10. It is alleged by Mr. Bays that Mr. Zeringue had insufficient automobile liability insurance to fully compensate him for his injuries and that, hence, Mr. Zeringue was an `underinsured motorist'."
Mr. Bays filed suit against the Estate of Mr. Zeringue, State Farm Insurance Company as the liability insurer and as Mr. Bays own uninsured/underinsured carrier, and National. By supplemental petition, Mr. Bays named American as a defendant, and, following numerous other pleadings filed by all parties, plaintiff filed a petition for declaratory relief requesting that the court determine the applicability of the National and American policies as they might relate to UM coverage on his behalf.
Following submission of the above-described stipulated facts, together with the pleadings, briefs and memoranda, the court issued judgment finding that appellee was afforded UM coverage to the extent of the liability limits of both the National and American policies. Following denial of their motions for new trial, American and National have appealed.

ANALYSIS OF NATIONAL POLICY
National urges on appeal that the trial court erred in finding Mr. Bays to be an insured under its policy issued to Total Energy Resources, Inc. National avers that the total policy language excludes the automobile driven by Mr. Bays at the time of the accident. Appellant claims that in order to determine whether a particular individual is afforded coverage one must look to the policy definition of "WHO IS INSURED"; and toward this end cites the Business Auto policy section specifically as follows:
"D. WHO IS INSURED.
1. You are insured for any covered auto.
2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow except:
a. The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.
b. Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos unless that business is yours.
c. Anyone other than your employees, a lessee or borrower or any of their employees, while moving property to or from a covered auto.
3. Anyone liable for the conduct of an insured described above is an insured but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered auto is an insured only if that auto is a trailer connected to a covered auto you own."
National urges that under D(2)(a) above, Mr. Bays is excluded for liability purposes since he drove an auto that the employer (the named insured) "borrowed" from an employee, namely himself.
The National policy also contains U.M. endorsements for several states, including one for Louisiana. It is undisputed that there is no signed waiver of U.M. coverage in this policy. In this U.M. endorsement, the following language defines an insured:
B. WHO IS AN INSURED
1. You.
2. If you are an individual, any "family member."
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily *718 injury" sustained by another "insured."
5. Anyone else "occupying" an "auto" you do not own and that is a covered "auto" under this coverage part for Liability Insurance and is licensed or principally garaged in Louisiana.
The parties generally agree, and so do we, that definitions 1, 2 and 4 have no application to the question on appeal. Under definition 5, the trial court, in its reasons for judgment, found that the National policy did afford U.M. coverage to Mr. Bays. He is correct.
We disagree, as discussed hereinafter, with the theory advanced by National that, for liability purposes, the auto owned by Mr. Bays, which he was driving in the course and scope of his employment, was excluded, as a non-covered auto. Nevertheless, we interpret the U.M. endorsement (above) as having expanded the definition of an insured under (B)(5). The declarations section of the policy reads in part as follows:

(ITEM FOUR is a "Schedule of Covered Autos You Own" and is not applicable for our purposes here.)
The policy continues to read as follows:
(ITEM TWO (cont'd.) (Explanation of "Estimated Total Premium"  this also is inapplicable to our proceedings.)
*719 
As can be observed, under the symbol designation, there are nine classifications of automobiles including five for "owned autos" and one for "specifically described autos". This latter category (specifically described autos) is shown on the declarations page as the designation for U.M. insurance. This designation is not, however, carried over to nor embodied in the U.M. endorsement or a waiver of U.M. coverageand the description of "WHO IS AN INSURED" under the U.M. section nowhere refers to these "specifically described autos."[1]
In Baesler v. State Farm Mut. Auto. Ins. Co., 481 So.2d 131 (La.1986), our Supreme Court found that an exclusion which applied to liability coverage but was not included in the U.M. endorsement did not operate to exclude the plaintiff from U.M. coverage. There, the liability insurance denied coverage, while the insured is driving a vehicle "furnished for the regular use of the named insured." The Court stated:
"On the basis of the affidavits submitted, this court would find it difficult to agree that Baesler's car had been furnished for his regular use, cf. Nevels v. Hendrix, 367 So.2d 33 (La.App. 4th Cir. 1978), or that such an exclusion could stand against the mandate of the uninsured, *720 motorist statute. See R.S. 22:1406(D)(1)(a). Because Baesler so clearly must prevail on the wording of the policy, however, it is unnecessary to consider either question.
Summary judgment is appropriate only when there is no genuine issue of material fact and when movant is entitled to judgment as a matter of law. C.C.P. 966. Under the Allstate policy, whether Baesler was assigned the vehicle for his regular use is immaterial. He is covered as against uninsured motorists while driving any vehicle, while occupying any vehicle, or while walking down the road. Allstate, upon showing assignment for regular use would not be entitled to judgment as a matter of law." [Emphasis supplied]
Thus, even if Allstate (in the case above) proved the vehicle was "assigned for regular use", it would not affect the U.M. portion of the policy which omitted the exclusionso says the Supreme Court.
In Capone v. King, 467 So.2d 574 (La. App. 5 Cir.1985), writs den. 468 So.2d 1205, this court found that an insurance policy which selected lower U.M. limits on owned vehicles, with no selection or waiver as to unowned vehicles, operated to extend coverage to a plaintiff driving an auto not owned by the insured:
"Aetna argues that because Mall selected the 5/10 coverage for owned cars, it implicitly rejected all U.M. coverage for non-owned cars. We disagree. The U.M. statute in effect writes into every automobile liability policy U.M. coverage equal to the limits of liability. Any reduction or waiver of this coverage must be made in writing. The only writing in the policy relating to U.M. coverage is a selection of 5/10 limits on cars owned by the insured. There is no writing reducing or waiving coverage to the liability limits on non-owned insured cars, and therefore the U.M. statute imposes on the policy U.M. coverage of $500,000.
Aetna also argues that the policy cannot provide U.M. coverage, because it only protects the corporate insured against liability, and does not protect persons per se. However, this assertion is belied by the fact that U.M. coverage of 5/10 thousand dollars is specifically selected as to owned automobiles. If the policy by its nature did not include U.M. coverage, then how could such coverage be selected at lower limits on owned vehicles, and whom would it protect, if not persons such as Capone who were injured by uninsured motorists. Obviously, then, the policy did provide U.M. coverage, and because there was no waiver or reduction as to non-owned cars, that coverage was $500,000."
Following our decision in Capone, supra (in which the Supreme Court denied writs), it is obviously insufficient for the insured to select certain specifically described vehicles for coverage under U.M. on the declarations page without specifically waiving coverage as to other autos included under the "Liability InsuranceAny Auto."
In Comberrel v. Basford, 550 So.2d 1356 (La.App. 5 Cir.1989), writs den. 556 So.2d 1284, 1285, 1286, this court found that the existence of U.M. coverage without underlying liability coverage was possible, depending on the policy's terms:
We also reject Sunset's argument that there must be proof of underlying liability coverage in order for there to be UM coverage. In Baesler v. State Farm Mut. Auto. Ins. Co., 481 So.2d 131 (La. 1986), it is clear that the Supreme Court found the existence of UM coverage without any underlying liability coverage. The case cited by Sunset, Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir. 1982), writ den. 409 So.2d 654 (1982), involved a self-insured defendant and turned upon whether or not a self-insurance certificate could be considered as having been "issued or delivered" in Louisiana. That case does not stand for the proposition that UM coverage cannot exist absent liability coverage under an insurance policy.
"The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge...." Roger v. Estate of Moulton, *721 513 So.2d 1126, 1932 (La.1987). UM coverage is for the protection of the innocent insured "from damage caused by a negligent uninsured motorist whether the injured insured is occupying an automobile listed in the policy, another automobile owned or unowned, or is occupying no automobile." Block v. Reliance Ins. Co., 433 So.2d 1040, 1043 (La.1983). This circuit, in considering whether or not a particular vehicle was covered under a policy, where it was not specifically listed and did not fall precisely into the definition of a replacement vehicle, held that ambiguous provisions which limit liability should be interpreted liberally in favor of coverage. Pomares v. Kansas City Southern Ry. Co., 474 So.2d 976 (La.App.1985), writ den. 477 So.2d 1131 (1985).
Appellee's reliance on Plaisance v. Fogg, 568 So.2d 1119 (La.App. 3 Cir.1990), writ den. 572 So.2d 63 (La.1991) and Stewart v. Robinson, 521 So.2d 1241 (La.App. 3 Cir. 1988), writ granted 526 So.2d 785, appeal dismissed by parties, No. 88-C-1116 (La. Nov. 21, 1988) is misplaced and, in any case, not binding in this circuit. In Plaisance, the policy definitions of an insured for U.M. coverage contained substantially the same wording and definitions as is found in B(1-4) of the policy sub judice. However, the Plaisance policy did not have the general coverage disposition contained in B(5) and on which we base our decision today.
National urges that the interpretation of Section B(5) of the endorsement by the trial court, to the effect that it provides U.M. coverage, leads to the absurdity that anyone in the world occupying any vehicle in the world would be provided with U.M. coverage under this policy. We disagree that the words of the contract lead to absurd consequences, as discussed hereinafter.
National agrees that TOTAL may have been liable in damages for an accident caused by Bays' negligence while in the course and scope of employment under the theory of respondeat superior, but, they state, that TOTAL was not his insurer.
LSA-C.C. art. 2320 decrees that "masters and employees are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." It is logical to conclude that TOTAL would, and in fact did, insure itself against this potential liability by choosing the very general category for liability insurance of "Any Auto". If such was not intended, TOTAL could have chosen any of the other eight categories of auto, including "Specifically Described Autos", "Owned Autos Only", etc.
It is apparent that TOTAL sought a policy which would protect it in such situations, and we do not find this to be an absurd conclusion, although, in our opinion, the interpretation urged by National above would indeed be ridiculous and would defy all logic and common sense.
Bays was, therefore, an insured for liability purposes and, absent a waiver of U.M. coverage, an insured for U.M. purposes to the extent of the liability limits of the policy, that is for $2 million. This assignment of error is without merit.

ANALYSIS OF AMERICAN POLICY
American issued a "Combined Risk Insurance Package", which included several insurance policies, including "Umbrella General Liability Insurance", in favor of TOTAL. The policy contains language which appears awkward in several places, and may well have been translated from the French language (the insurance brokers who wrote the policies are based in Canada). For instance, an "Assured" is defined, admist a broad spectrum of classifications for insured persons, as: "... and more generally any and all persons whilst on duty for the account of the Assured."
In Chapter II, "Declarations", we find the following:
B. MEANS USED BY THE ASSURED
The Assured declares:
1. That he makes use of:
. . . . .
(d) any and all means of transport by land, air, riverways and sea;
. . . . .

*722 As owner, tenant or hirer, lessee or lessor, concession holder, user, in any capacity;
. . . . .
3. that he effects [sic] at all times and in any and all places operations and works of any nature whatsoever deemed to be necessary by the firm;
In Chapter III, the policy reads in pertinent part:
PURPOSE OF INSURANCE
The purpose of the present contract is to:
(a) guarantee the Assured against the financial consequences of the responsibility for which he may be liable as a consequence of any legislation regulation, convention, legal sentence, arbitration, or of any usage, for damages, losses and/or prejudices caused to third parties. The guarantee thus defined comprises among other things:
. . . . .
the financial consequences of the "employer's liability". This guarantee shall apply only after exhaustion of cover of any specific contract and, in any case beyond the minimum amounts of insurance required by applicable laws.
We think it quite clear that the American policy, by its terms, encompassed the risk of insuring motor vehicles. The Supreme Court, in Southern Am. Ins. v. Dobson, 441 So.2d 1185 (La.1983), found that umbrella policies which provide automobile liability coverage are governed by LSA-R.S. 22:1406. See also Capone, supra.
American avers that its policy contains an exclusion for automobile liability. The provision in question states:
EXCLUDED RISKS
NOTWITHSTANDING ANYTHING TO THE CONTRARY ARE ONLY EXCLUDED FROM THE GUARANTEES OF THE PRESENT CONTRACT.
. . . . .
6. Damages caused by a land motor vehicle to the extent they are subject to compulsory insurance within the minimal limits to be legally insured.
However, the Assured remains covered by the guarantee in case of deficiency of contracts to be subscribed in accordance with such compulsory requirements.
Although the second paragraph is poorly constructed and ambiguous, we interpret this section to mean that damages up to the statutory compulsory liability limits are excluded by this policythat is, up to $10,000.00 in Louisiana. As the trial court said:
"There is no requirement that drivers have uninsured motorist coverage; the law merely states that it must be offered by the insurer and will be presumed to be a part of the policy unless specifically rejected in writing. As there was no such rejection here uninsured motorist coverage is provided."
American also contends that the trial court erred in failing to address the issue of whether punitive and exemplary damages are covered under its policy. In his petition for declaratory relief, plaintiff stated that both appellants had denied that their respective policies afforded U.M. protection to him, and he requested the court determine whether or not he was covered as an insured by those policies. We do not find the question of punitive or exemplary damages as having been before the court for it to make any determination. It is inappropriate for us to make any findings with regard to these damages as this would go beyond the scope of the petition for declaratory judgment, and the matter has not been raised first in the trial court. Accordingly, as pleaded by the plaintiff, we find no error here.
American also argues that the trial court erred in failing to find LSA-R.S. 22:1406 unconstitutional as applied to excess/umbrella policies, as well as to policies written and delivered in other states. American did not address nor plead this issue in the trial court proceedings. Therefore, we decline to consider it here, since constitutionality must be specifically pleaded in the trial court, initially, and cannot be *723 asserted for the first time on appeal. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984); 24th Judicial Dist. v. Molaison, 522 So.2d 177 (La.App. 5 Cir.1988), writ den. 524 So.2d 512.
Finally, we feel constrained to make the following observation. The Louisiana statutes mandating, and automatically writing U.M. coverage into insurance policies issued in this state unless specifically rejected in writing, and the Louisiana Supreme Court's continued liberal interpretation of these laws, have been published in the statute books and the Southern Reporter for several years now. In addition, the Louisiana jurisprudence construing an ambiguous contract against he who drafted it and ambiguous insurance policies in favor of the insured is legion and certainly well known to all who are in the insurance business. In view of these observations, if certain insurance companies continue to write vague and ambiguous policies, and disregard the requirements of the waiver of U.M. coverage, as clearly enunciated in the statutes and court opinions, they have no one to blame but themselves for unfavorable judgments and opinions regarding interpretation of U.M. policy provisions.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of the appeal are taxed to appellants.
AFFIRMED
NOTES
[1] LSA-R.S. 22:1406(D)(1)(e) now provides as follows:

"(e) The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles."
We need not interpret that provision today inasmuch as the change in law applies only to policies issued or renewed with effective dates after September 9, 1988.