634 So.2d 1234 (1994)
Cyrus RATCLIFF, Sr., et al., Plaintiffs-Appellees,
v.
Earl P. THERIOT, et al., Defendants-Appellants.
No. 93-973.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
Writ Denied May 6, 1994.
R. Scott Ramsey Jr., Morgan City, for Cyrus Ratcliff Sr., et al.
Robert Murray Mahony, Lafayette, for Earl P. Theriot, et al.
William Allen Repaske, New Iberia, for Transp. Ins. Co.
Leslie Jo Mahfouz, Lafayette, for Aetna Cas. & Sur. Co.
Before KNOLL and COOKS, JJ., and CULPEPPER,[*] J. Pro Tem.
*1235 WILLIAM A. CULPEPPER, Judge Pro Tem.
Transportation Insurance Company appeals a declaratory judgment holding that it provided uninsured/underinsured motorist coverage to Cyrus Ratcliff.

FACTS
It is not disputed that on October 10, 1991, Cyrus Ratcliff, Sr. was injured when a vehicle driven by Earl P. Theriot collided into the rear of a vehicle owned and driven by Ratcliff. At the time of the accident, Ratcliff was in the course and scope of his employment with Quality Diesel Service, Inc. Transportation Insurance Co. had issued a business automobile insurance policy to Quality Diesel Service, Inc. Cyrus Ratcliff and his wife, Katherine Duval Ratcliff, filed suit for damages arising out of the accident. By first supplemental and amending petition, the Ratcliffs named Transportation Insurance Co. as a defendant, claiming UM coverage under the policy issued to Quality Diesel Service, Inc. The Ratcliffs subsequently filed a motion for declaratory judgment on the issue, which the trial court granted.

TRIAL COURT'S REASONS
The trial court gave the following reasons for ruling:
"The cover (or first page) of the copy of the insurance policy submitted to the Court shows that the policy as it insures for underinsured or uninsured motorist loss applies to "Auto Symbol 02". Symbol 2 is defined on Page 1 of 11 (Tab 3) as owned autos only. Therefore, by the wording of the policy, UM coverage applies only to owned vehicles.
"The policy provides liability coverage for any auto (Symbol 01 or 1), but UM coverage only for owned autos.
"In order for the insured to restrict the UM coverage to less than the coverage for liability, the insured must make a specific rejection or choice thereon. R.S. 22:1406. The UM application contained in the policy shows no such restriction or rejection. (Tab 5). Therefore the liability coverage written by Transportation Insurance Company must be extended to the UM coverage. Since the liability coverage would apply to the instant accident had the plaintiff been at fault, the UM coverage must apply."

OPINION
On appeal, Transportation Insurance Co. asserts that the trial court erred in finding that the policy would have provided liability coverage to Ratcliff, thereby mandating the extension of UM coverage under the UM statute, LSA-R.S. 22:1406(D)(1)(a)(i).
LSA-R.S. 22:1406(D)(1)(a)(i) mandates UM coverage for persons who are insured under an automobile liability insurance policy (unless rejected in writing). Plaisance v. Fogg, 568 So.2d 1119 (La.App. 3d Cir.1990), writ denied, 572 So.2d 63 (La. 1991). Under "SECTION IILIABILITY COVERAGE" of the Transportation Insurance Co. policy, subsection 1.b.(2) defines "insureds" as:
"b. Anyone else while using with your permission a covered `auto' you own, hire or borrow except:
* * * * * *
(2) Your employee if the covered `auto' is owned by that employee or a member of his or her household."
We agree with Transportation Insurance Co. that since Ratcliff was the owner of the vehicle and an employee of Quality Diesel Service, Inc., he was not an "insured" under the liability provisions of the policy. Accordingly, UM coverage under LSA-R.S. 22:1406(D)(1)(a)(i) is not required. See Plaisance, supra. It is immaterial that Ratcliff's auto was a covered auto for liability purposes since he was not an insured for liability purposes. See generally, Plaisance, supra.
However, the policy contains a UM endorsement which provides in part:
"A. COVERAGE
1. We will pay all sums the `insured' is legally entitled to recover as damages from the owner or driver of an `uninsured motor vehicle.' The damages must result from `bodily injury' sustained by the `insured' caused by an *1236 `accident.' The owner's or driver's liability for these damages must result from ownership, maintenance or use of the `uninsured motor vehicle.'
* * * * * *
B. WHO IS AN INSURED
1. You.
2. If you are an individual, any `family member.'
3. Anyone else `occupying' a covered `auto' or a temporary substitute for a covered `auto.' The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured.'
5. Anyone else `occupying' an `auto' you do not own and that is a covered `auto' under this coverage part for Liability Insurance and is licensed or principally garaged in Louisiana."

(Emphasis added.)
Ratcliff asserts that the definition of "Who is an Insured" under the liability coverage part was amended by this UM endorsement. He asserts that he would have been an insured under section B(3) or B(5).
The declaration page designates covered autos for UM purposes as "owned `autos' only" (covered auto symbol "02"). Ratcliff would not be an insured under B(3) because he was not occupying a "covered `auto'" for UM purposes.
The endorsement appears to be a standard form and purports to modify insurance provided under business auto coverage, garage coverage, and truckers coverage forms. On its face, the endorsement would seem to provide coverage to Ratcliff under section B(5) since (1) Ratcliff was occupying a vehicle that Quality Diesel Service, Inc. did not own; (2) Ratcliff's auto is a "covered `auto'" under the coverage part for liability insurance ("any `auto'"); and (3) it is not disputed that Ratcliff's automobile is licensed or principally garaged in Louisiana. Indeed, the endorsement, literally construed, purports to extend UM coverage to anyone while occupying any auto, as long as the auto is not owned by Quality Diesel Service, Inc. and is principally licensed or garaged in Louisiana. Thus, conceivably, even the members of this court could claim UM coverage under the policy as literally construed. We can see that under certain selections for covered autos the B(5) provision of the endorsement would not lead to absurd consequences; however, because of the selection for covered autos (i.e. "any `auto'") for liability purposes in this policy, the B(5) provision leads to absurd consequences.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046; Cashio v. Shoriak, 481 So.2d 1013 (La.1986). In Cashio, the court explained:
"Even if the words are fairly explicit, it is our duty to refrain from construing them in such a manner as to lead to absurd consequences. Texaco v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541 (1963); National Roofing and Siding Co. v. Giaise, 434 So.2d 85 (La.App. 5th Cir.1982), writ denied, 435 So.2d 443 (La.1983). When a literal interpretation will produce absurd consequences, the court may consider all pertinent facts and circumstances, including the parties' own conclusion of the instrument's meaning, rather than adhere to a forced meaning of the terms used. La.Civ.Code art. 2046; Kendrick v. Garrene, 233 La. 106, 96 So.2d 58 (1957); Cardos v. Cristadoro, 228 La. 975, 84 So.2d 606 (1955)."
481 So.2d at 1015.
See also Ainsworth v. Association Life Insurance Co., Inc., 325 So.2d 708 (La.App. 4th Cir.), writ denied, 328 So.2d 105 (La.1976), where the above rule was applied to an insurance policy.
In our opinion, the facts suggest that the parties did not intend to extend UM coverage to Ratcliff under the circumstances of this case. As set forth above, Ratcliff was excluded as a named insured under the liability coverage part, and therefore, statutory UM coverage was not required. Additionally, on the declaration page, UM coverage is *1237 expressly restricted to owned autos only. Furthermore, Quality Diesel Service, Inc. did not need to insure itself against potential tort claims by employees through UM coverage because employees are generally limited to worker's compensation benefits. See also Plaisance, supra. Rather, it appears to us that the combination of the standard form endorsement and the covered auto coverage selections resulted in an inadvertent and unintended extension of coverage, as evidenced by the potential for absurd consequences.
Thus, we hold that the Transportation Insurance Co. policy does not provide UM coverage to Ratcliff. We disagree with Bays v. Estate of Zeringue, 584 So.2d 715 (La.App. 5th Cir.), writs denied, 590 So.2d 79 and 590 So.2d 576 (La.1991) insofar as it conflicts with our decision.
Finally, finding that Ratcliff was not insured under the policy, we need not address the applicability of LSA-R.S. 22:1406(D)(1)(e) which provides:
"(e) The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles."

DISPOSITION
For the foregoing reasons, we reverse the judgment of the trial court at plaintiffs' cost.
REVERSED AND RENDERED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.