768 So.2d 720 (2000)
Marjorie DUNN, Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Nancy L. Solito and The Travelers Insurance Company, Defendants.
No. 33,904-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2000.
*721 Richard L. Fewell, Jr., West Monroe, Leade & Verlander, L.L.P., by Paul Jeffrey Verlander, Monroe, Counsel for Appellant.
Donald Armand, Jr., Shreveport, Elizabeth A. Lawrence, Lafayette, Counsel for Appellee Phoenix Insurance Company.
Thomas G. Zentner, Jr., Monroe, Counsel for Defendants, St. Paul Fire & Marine Insurance Company and Nancy Solito.
C. Joseph Roberts, III, Monroe, Counsel for Superior National Insurance Group.
Before BROWN, STEWART & PEATROSS, JJ.
PEATROSS, J.
Plaintiff Marjorie Dunn appeals from the grant of summary judgment in favor of Phoenix Insurance Company, her employer's uninsured motorist insurance carrier. For the following reasons, we affirm.

FACTS
On March 5, 1998, Marjorie Dunn was injured in an automobile accident while driving her personally-owned vehicle in the course and scope of her employment with Central American Life Insurance Company ("Central"). The cause of the accident was the negligence of Nancy Solito, a third-party tortfeasor. Ms. Dunn sustained personal injuries and property damage as a result of the accident. On March 5, 1999, Ms. Dunn filed suit against Ms. Solito; Ms. Solito's insurer, St. Paul Fire & Marine Insurance Company; and Central's commercial automobile liability insurance carrier, Phoenix Insurance Company ("Phoenix"). Superior National Insurance Group, Central's workers' compensation carrier, intervened for amounts it paid on behalf of Ms. Dunn.
Phoenix subsequently filed a motion for summary judgment on the issue of coverage, contending that (1) Ms. Dunn was not an "insured" for automobile liability purposes and, as such, was not entitled to uninsured motorists ("UM") benefits; and *722 (2) Ms. Dunn was not entitled to such benefits under the UM endorsement to the policy. On February 16, 2000, the trial court granted summary judgment in favor of the insurer and dismissed it from the lawsuit.

DISCUSSION
The precise issues presented in this case have recently been addressed by our supreme court in Carrier v. Reliance Insurance Co., 99-2573 (La.4/11/00), 759 So.2d 37. The issues are (1) whether Ms. Dunn, who was injured while driving her own vehicle in the course and scope of her employment, qualifies as an insured under the UM coverage, or endorsement, of the employer's policy; and (2) if not, whether she qualifies as an insured under the liability coverage of the policy, thereby entitling her to UM coverage. Construing virtually identical policy language to the one presently under our review, the supreme court answered both questions in the negative, holding that the employer's commercial auto policy provided no uninsured motorist coverage to an employee using his own car while in the course and scope of his employment. We will briefly address each issue in turn.

Coverage under UM Endorsement
Ms. Dunn argues that the UM endorsement affords her coverage. In light of Carrier, supra, we must disagree. The UM endorsement in the present case is identical to the endorsement at issue in Carrier, and provides as follows:
B. WHO IS AN INSURED
1. You.
2. If you are an individual, any "family member."
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."
5. Anyone else "occupying" an "auto" you do not own and that is a covered "auto" under this coverage part for Liability Insurance and is licensed or principally garaged in Louisiana.
(Emphasis ours.) The definitions section of the liability insurance policy defines "auto" as follows:
"Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include "mobile equipment."
Ms. Dunn asserts the same argument as the plaintiff in Carriersince she was occupying a vehicle, not owned by her employer, that was a "covered auto" under the liability portion of the policy (which defines "covered auto" as "any auto"), she is an insured under Section B(5) of the UM endorsement quoted above.[1] The Carrier court rejected this argument stating:
We disagree with the interpretation of Section B5 in Husband [v. Darby, 99-270 (La.App. 3d Cir.11/29/99), 749 So.2d 779, writ granted and cause remanded, 2000 WL 900718 (La.6/16/00), 763 So.2d 613.] The key language in Section B5 that is subject to interpretation states, in effect, that an "insured" includes "[a]nyone else occupying an auto [the named insured] do[es] not own and that is a covered auto under this coverage part for Liability Insurance ...." (emphasis added). The words "this coverage part," contained in the UM coverage portion of the policy, are obviously the critical words in the interpretation process. The phrase "for Liability Insurance," *723 following "this coverage part," makes Section B5 ambiguous. Without the phrase "for Liability Insurance," Section B5 would unambiguously refer to a "covered auto" as defined in this UM coverage, where the symbol for "covered auto" is "7," meaning "specifically described autos." Since plaintiff's vehicle was not among the vehicles specifically described in his employer's policy, he clearly would not be an insured under Section B5.
(Footnotes omitted.) The supreme court held that "covered auto" in Section B(5) of the UM endorsement means those autos specifically referred to as covered by uninsured motorist coverage on the declarations page:
Applying these general principles to the particular facts of this case, we conclude that the rule of strict construction is inapplicable since Section B5 is only subject to one reasonable interpretation. Looking to other provisions in Reliance's policy, we conclude that "covered autos" in Section B5 may reasonably be interpreted to mean "specifically described autos." We note that the declarations page indicated, by a symbol, that "covered autos" for UM coverage were "specifically described autos," which were limited elsewhere in the policy to "[o]nly those autos described in ITEM THREE of the Declarations for which a premium charge is shown...." Plaintiff's vehicle is not listed in Item Three of the Declarations.
In Carrier, the declarations page symbol "7" was applied to uninsured motorist coverage. In that policy, as in this one, symbol "7" was defined as "specifically described autos." In the case sub judice, the declarations page specifies the policy symbol "2" for purposes of uninsured motorist coverage. The policy defines symbol "2" as follows:
OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.
We find this distinction between the cases to be irrelevant, however, as Ms. Dunn, not Central, owned the car in which Ms. Dunn was injured. Ms. Dunn's car, therefore, is not included in those autos covered by the uninsured motorist coverage. Despite the difference between this case and Carrier in the vehicles included in uninsured motorist coverage by the declarations pages, the same result obtains. Ms. Dunn's autolike the auto in Carrier does not fit within the definition of autos covered by the uninsured motorist section of the policy as delimited on the declarations page; in this case, because Central did not own the car, and in Carrier, because the car was not specifically listed.
Moreover, this policy, like the one in Carrier, contains another exclusion in the uninsured motorist endorsement that excludes coverage for "[b]odily injury sustained by an insured while occupying or struck by any vehicle owned by that insured that is not a covered auto." The Carrier court held that this exclusion, independently of Section B(5), precluded uninsured motorist coverage for the employee.

Coverage under liability portion of policy
Ms. Dunn argues that, even if she was not covered by the UM endorsement, she was an insured under the general liability portion of the policy and UM coverage should extend to her. Again, we disagree. The general liability portion of this policy defines an insured as, inter alia:
* * *
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
* * *
(2) Your employee if the covered "auto" is owned by that employee or a member of his household.
*724 Ms. Dunn, using her own car, is clearly not an insured for the liability portion of the policy. Despite Ms. Dunn's argument that she was driving a "covered auto" at the time of the accident, any determination of whether she is entitled to UM benefits must follow a determination that she is, in fact, an insured for purposes of liability coverage. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191. Since we conclude that Ms. Dunn was not an insured under the liability portion of the policy, she is not entitled to UM benefits. See Carrier, supra.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are taxed to Appellant, Margorie Dunn.
AFFIRMED.
BROWN, J., concurs. The policy language is apparently clear to the Supreme Court.
NOTES
[1] Ms. Dunn cites Husband v. Darby, 99-270 (La.App. 3d Cir.11/29/99), 749 So.2d 779 writ granted and cause remanded, (La.6/16/00), 763 So.2d 613, and Bays v. Estate of Zeringue, 584 So.2d 715 (La.App. 5th Cir.), writ denied, 590 So.2d 79 (La.1991), for the proposition that the language of the uninsured motorist coverage endorsement provided coverage to her. These cases, however, were expressly abrogated by the supreme court in Carrier, supra.