961 So.2d 1201 (2007)
Corey HALPHEN
v.
Luis O. BORJA, Davis Mechanical Contractors, Inc., Eagle Insurance Company, State Farm Mutual Automobile Insurance Company, and the American Central Insurance Company.
No. 2006 CA 1465.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
*1203 A.J. Paul Fredrickson, II, Baton Rouge, for Plaintiff-Appellant Corey Halphen.
Daniel R. Atkinson, Jr., Daniel J. Balhoff, Perry, Atkinson, Balhoff, Mengis & Burns, L.L.C., Baton Rouge, for Defendant-Appellee American Central Ins. Co.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
Corey Halphen appeals the district court's judgment, which granted a motion for summary judgment in favor of his employer's automobile insurer, American Central Insurance Company (American), and dismissed his claims against it on the grounds that American's policy did not provide underinsured/uninsured motorist (UM) coverage for Halphen while driving his personal automobile. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
On July 19, 1999, Corey Halphen was injured in an automobile accident while driving his personal vehicle. He was employed by Rabenhorst Funeral Home, Inc. (Rabenhorst), which had a business automobile insurance policy from American. Halphen sued American, along with several *1204 other defendants,[1] alleging that he was in the course and scope of his employment when the accident occurred and that American provided UM coverage for him under the policy issued to Rabenhorst. American filed a motion for summary judgment, claiming there was no UM coverage under its policy for Halphen. The district court agreed and granted American's motion, dismissing Halphen's claims against American in a judgment signed October 25, 2005.[2] Halphen's motion for a new trial was denied in a judgment signed February 9, 2006, and he appealed.

APPLICABLE LAW
Summary Judgment
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. See Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. Summary judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A summary judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or damages. See LSA-C.C.P. art. 966(E); Bilbo for Basnaw v. Shelter Ins. Co., 96-1476 (La.App. 1st Cir.7/30/97), 698 So.2d 691, 694, writ denied, 97-2198 (La.11/21/97), 703 So.2d 1312. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue of material fact remains with the party bringing the motion. See LSA-C.C.P. art. 966(C)(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. An insurer seeking to avoid coverage through summary judgment must prove some provision or exclusion applies to preclude coverage. Gaylord Chem. Corp. v. ProPump, Inc., 98-2367 (La.App. 1st Cir.2/18/00), 753 So.2d 349, 352.
Insurance Policy Interpretation
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. See LSA-C.C. art. 2045; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763. If the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the parties' *1205 intent. LSA-C.C. art. 2046 The court should not strain to find ambiguity where none exists. Strickland v. State Farm Ins. Companies, 607 So.2d 769, 772 (La. App. 1st Cir.1992). The determination of whether a contract is clear or ambiguous is a question of law. McMath Const. Co., Inc. v. Dupuy, 03-1413 (La.App. 1st Cir.11/17/04), 897 So.2d 677, 681, writ denied, 04-3085 (La.2/18/05), 896 So.2d 40.
However, if there is ambiguity in an insurance policy, it must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions. See LSA-C.C. art. 2050; Louisiana Ins. Guar. Ass'n, 630 So.2d at 763. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Breland v. Schilling, 550 So.2d 609, 610-11 (La.1989). If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of coverage for the insured. See LSA-C.C. art. 2056; see also Louisiana Ins. Guar. Ass'n, 630 So.2d at 764. Under this rule of "strict construction," equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. However, for the rule of strict construction to apply, the policy must be susceptible to two or more interpretations, both of which are reasonable. See Bonin v. Westport Ins. Corp., 05-0886 (La.5/17/06), 930 So.2d 906, 911.
Even if the words are fairly explicit, the court must refrain from construing them in such a manner as to lead to absurd consequences. When a literal interpretation will produce absurd consequences, the court may consider all pertinent facts and circumstances, including the parties' own conclusion of the instrument's meaning, rather than adhere to a forced meaning of the terms used. See LSA-C.C. art. 2046; Ratcliff v. Theriot, 93-973 (La. App. 3rd Cir.3/2/94), 634 So.2d 1234, 1236, writ denied, 94-0685 (La.5/6/94), 637 So.2d 1048; see also Carrier v. Reliance Ins. Co., 99-2573 (La.4/11/00), 759 So.2d 37, 44; McEachern v. Mills, 36,156 (La.App. 2nd Cir.8/16/02), 826 So.2d 1176, 1180-81; Ehrlicher v. State Farm Ins. Co., 171 F.3d 212, 214-15 (5th Cir.1999).
UM Coverage
Under Louisiana's UM statute, LSA-R.S. 22:680,[3] automobile liability insurance delivered or issued for delivery in Louisiana and arising out of the ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide UM motorist coverage for the protection of persons insured thereunder equal to the liability coverage provided for bodily injury, unless UM coverage has been validly rejected or lower UM limits have been selected. See Jones v. Henry, 542 So.2d 507, 508 (La.1989). The requirement that there be UM coverage is an implied amendment of any automobile liability policy, even one which does not expressly address the subject matter, as UM coverage will be read into the policy unless validly rejected. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). Although Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well-settled *1206 that a person who does not qualify as an "insured" for liability coverage under a policy of insurance is not entitled to UM coverage under the policy. In other words, a plaintiff must be an "insured" under auto liability coverage to be entitled to UM coverage. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, 196.
Limitations on UM coverage are valid where they are authorized by statute. Galliano v. State Farm Mut. Auto. Ins. Co., 606 So.2d 580, 581 (La.App. 5th Cir.1992). Therefore, even if a person is an "insured" for liability coverage, if the policy under which he claims UM coverage describes specific motor vehicles, the UM coverage does not apply to bodily injury of such an insured while occupying a motor vehicle owned by that insured unless that motor vehicle is described in the policy under which the claim is made. See LSA-R.S. 22:680(1)(e); Jones v. Allstate Ins. Co., 619 So.2d 111, 114 (La.App. 1st Cir.), writ denied, 626 So.2d 1186 (La.1993), partially abrogated on evidentiary ruling by Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226; Shackelford v. State Farm Mut. Auto. Ins. Co., 94-514 (La.App. 5th Cir.11/29/94), 646 So.2d 1209, 1211; Dunn v. St. Paul Fire & Marine Ins. Co., 33,904 (La.App. 2nd Cir.9/27/00), 768 So.2d 720, 722-24, writ denied, 00-3014 (La.12/15/00), 777 So.2d 1235; Southerland v. Continental Cas. Co., 36,782 (La.App. 2nd Cir.1/29/03), 837 So.2d 712, 714, writ denied, 03-0955 (La.5/16/03), 843 So.2d 1137; Ehrlicher, 171 F.3d at 214-15.

ANALYSIS
The starting point for interpreting an insurance policy is an examination of the relevant policy provisions. The "Business Auto Declarations" page shows the named insureds as "Rabenhorst Funeral Home, Inc." and "Rabenhorst Life Ins. Co., Inc." The "Schedule of Coverages and Covered Autos" on that page displays a chart that uses numerical designations to show which vehicles are covered automobiles for the types of insurance listed. The covered automobiles for liability insurance are denoted by the number "1," while the covered automobiles for uninsured motorists insurance are denoted by the number "2." Above this chart is an explanation, which states, in pertinent part:
Each of these coverages will apply only to those AUTOS shown as covered AUTOS. AUTOS are shown as covered AUTOS for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS SECTION of the BUSINESS AUTO COVERAGE FORM next to the name of the coverage.
Turning to the "Business Auto Coverage Form," which provides a description of the covered auto designation symbols, we note that with respect to covered autos for liability insurance, the number "1" denotes any auto, while with respect to covered autos for UM insurance, the number "2" denotes owned autos only, which is further explained to mean only those autos "you own." This form also explains that the words "you" and "your" refer only to the named insureds shown in the declarations. Therefore, based on these provisions of the business auto declarations page, the policy indicates that UM coverage is provided only for automobiles owned by the named insureds, Rabenhorst or its affiliated life insurance company.
UM coverage is further limited by the statement on the UM declarations page indicating that such coverage is provided only for automobiles owned by the named insureds that are listed on an attached "Schedule of Covered Autos You Own." Thus, UM coverage is limited to automobiles owned by a named insured and listed *1207 on the schedule as a covered auto. The car Halphen was driving when the accident occurred was his personal vehicle and was not listed as a covered auto for UM coverage on the schedule of covered autos. These provisions of the UM declarations page would support American's position that its policy did not provide UM coverage for Halphen when he was driving his personal vehicle.
The first analytical problem arises in the definition of who is an insured in the UM section of the policy. It states that in addition to the named insureds, UM coverage is provided for:
Anyone else "occupying" an "auto" you [the named insureds] do not own and that is a covered "auto" under this coverage part for Liability Insurance and is licensed or principally garaged in Louisiana.
This provision is internally inconsistent. It predicates insured status for UM coverage on occupying an auto the named insured does not own, but which is a covered auto "under this coverage part," which would be understood to be UM coverage, since that is the coverage part of the policy in which this definition is found. But only vehicles owned by the named insureds are covered autos "under this coverage part." The definition goes on to say "for Liability insurance," which could be interpreted as "any auto," since those are the covered autos for liability insurance. For vehicles licensed or principally garaged in Louisiana, this interpretation would virtually eliminate the UM designation of covered vehicles as those owned by the named insureds and listed on a schedule of covered autos. The inherent ambiguity of this provision was noted by the Louisiana Supreme Court in Carrier, in which the following statement was made:
The key language in Section B5 that is subject to interpretation states, in effect, that an "insured" includes "[a]nyone else occupying an auto [the named insured] do[es] not own and that is a covered auto under this coverage part for Liability Insurance. . . ." (emphasis added). The words "this coverage part," contained in the UM coverage portion of the policy, are obviously the critical words in the interpretation process. The phrase "for Liability Insurance," following "this coverage part," makes Section B5 ambiguous. Without the phrase "for Liability Insurance," Section B5 would unambiguously refer to a "covered auto" as defined in this UM coverage, where the symbol for "covered auto" is "7," meaning "specifically described autos." Since plaintiffs vehicle was not among the vehicles specifically described in his employer's policy, he clearly would not be an insured under Section B5.
On the other hand, Section B5 arguably could be interpreted, as written, to refer to a "covered auto" as defined in the liability coverage of the policy, where the symbol for covered auto is "1," meaning "any auto." In our view, however, this interpretation . . . is not reasonable.
Carrier, 759 So.2d at 42-43 (footnotes omitted).
There is also an exclusion in the UM coverage section of the policy, which states that the UM insurance does not apply to:
4. "Bodily Injury" sustained by an "insured" while "occupying" or struck by any vehicle owned by that "insured" that is not a covered "auto."
It appears that "covered auto" in this exclusion refers unequivocally to those listed in the schedule of covered automobiles for which UM coverage is provided. Therefore, in spite of the ambiguity in the definition of who is an insured, this exclusion clarifies that Halphen, even if he is somehow *1208 an "insured," is not provided UM coverage for bodily injury sustained while occupying his personal vehicle that is not listed on the schedule of covered autos for UM coverage.
However, Halphen contends that if he is an insured under the liability coverage provisions, then Louisiana law mandates UM coverage for him under the policy. He reasons that since liability insurance in the policy covers "any auto," that includes his personal vehicle as a covered auto. He further maintains that since "any auto" includes all the other enumerated designations, his personal vehicle is covered for liability under the designation "9," which is defined as:
NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.
Turning to the definition of who is an insured for liability coverage, we find that:
The following are "insureds":
a. You [the named insureds] for any covered "auto."
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
* * *
(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.
Under this exception, even if Halphen's personal auto were a covered auto for liability coverage because it falls within the definition of "any auto," and if his use of that auto were considered "borrowing" of that vehicle by the named insureds due to its use to benefit a named insured, this provision would exclude him from being an insured for liability coverage. Additionally, a policy exclusion states that liability coverage does not apply to bodily injury to an employee of the insured arising out of and in the course of employment by the insured. However, there is also an endorsement page in the policy entitled "CU SECURITY FOR AUTO," on which the definition of who is an insured for liability coverage is broadened by adding:
d. Any employee of yours while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.
According to a page in the business auto declarations, the forms and endorsements applying to this policy include the above endorsement, and this amendment is applicable to "Liab Coll Comp." This endorsement supports Halphen's contention that he is an "insured" for liability coverage.
Ultimately, the crux of the issue is whether the policy can reasonably be interpreted to mean that because "any auto" was a "covered auto" under the liability portion of the policy, Halphen was an "insured" for liability coverage, and therefore, UM coverage had to be provided to him, even though he was driving his own vehicle when the accident occurred, which was not owned by the named insureds and was not listed on the schedule of covered autos for UM coverage. Based on the applicable jurisprudence and the provisions of LSA-R.S. 22:680(1)(e), we reject this interpretation as contrary to statutory authority and as unreasonable.
Subparagraph (e) of LSA-R.S. 22:680(1)[4] states:

*1209 The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles.
This provision became part of the UM statute by the passage of 1988 La. Acts, No. 203, § 1. See former LSA-R.S. 22:1406(D)(1)(e). It was apparently intended to change the law, so as to "legislatively overrule" a decision by the Louisiana Supreme Court that allowed an insured to select the most advantageous UM coverage when driving a vehicle with a lower UM limit than that available to him from another policy under which he was also an "insured" for liability coverage. See Wyatt v. Robin, 518 So.2d 494 (La.1988) (claimant driving his own vehicle with statutory minimum UM coverage could claim higher UM coverage available to him on his parents' automobile, since he resided in their household at the time of the accident and thus, was an insured under their policy). Shortly after passage of this subparagraph, W. Shelby McKenzie and H. Alston Johnson, III, in Insurance Developments in the Law, 1987-1988, 49 La. L.Rev. 349, 354 (1988), commented that:
The new subparagraph thus provides that when an insured suffers bodily injury while occupying a certain motor vehicle that he owns, he may not demand payment under any policy that does not specifically cover that vehicle. . . . In cases . . . in which the insured suffers injury while occupying an automobile owned by him, subparagraph (e) would permit recovery only under the particular policy issued on that automobile.
In Haltom v. State Farm Mut. Auto. Ins. Co., 588 So.2d 792, 795 (La.App. 2nd Cir. 1991), the Second Circuit stated that another rationale for this provision was to keep vehicle owners from carrying UM coverage on only one of two or more owned vehicles, thus obtaining the benefit of UM coverage regardless of which vehicle they occupied when an accident occurred, at the cost of only one UM policy. This court reached a similar conclusion in Jones, 619 So.2d at 114. In these cases, even though the claimant had bought and paid for liability and UM coverage under a policy covering one vehicle, he could not claim the benefit of that UM coverage if the accident occurred while he was occupying another motor vehicle that he also owned, but on which he had lower UM limits or had waived or rejected UM coverage. We note that in the case we are reviewing, Halphen is not trying to obtain the benefit of UM coverage on another vehicle he owned or from another policy on which he or a family member paid the premiums. Rather, he claims UM coverage under a policy covering vehicles he did not own and for which he did not pay premiums for liability or UM coverage.
In the Shackleford case, the Fifth Circuit applied subparagraph (e) to preclude UM coverage to a woman who was injured while driving a vehicle she owned, but claiming UM coverage under her deceased father's automobile liability policy, on which she was an insured for liability, but which did not list the vehicle she was driving when the accident occurred. In that case, even though her status as an insured for liability coverage on her father's vehicle was not contested, UM coverage was denied under the clear statutory mandate. Shackleford, 646 So.2d at 1211.
*1210 Several more recent cases from other courts have interpreted subparagraph (e) in a factual context more similar to the case we are reviewing. In the Ratcliff case, a motorist who was injured in an automobile accident while acting within the course and scope of his employment brought a declaratory judgment suit for UM coverage against the insurer that issued an automobile liability policy to his employer. In denying UM coverage to the employee claimant, the Third Circuit analyzed the policy provisions as follows:
The declaration page designates covered autos for UM purposes as "owned `autos' only" (covered auto symbol "02"). Ratcliff would not be an insured under B(3) because he was not occupying a "covered `auto"' for UM purposes.
The endorsement appears to be a standard form and purports to modify insurance provided under business auto coverage, garage coverage, and truckers coverage forms. On its face, the endorsement would seem to provide coverage to Ratcliff under section B(5) since (1) Ratcliff was occupying a vehicle that [his employer] did not own; (2) Ratcliff's auto is a "covered `auto"' under the coverage part for liability insurance ("any `auto"'); and (3) it is not disputed that Ratcliff's automobile is licensed or principally garaged in Louisiana. Indeed, the endorsement, literally construed, purports to extend UM coverage to anyone while occupying any auto, as long as the auto is not owned by [the named insured, Ratcliff's employer] and is principally licensed or garaged in Louisiana. Thus, conceivably, even the members of this court could claim UM coverage under the policy as literally construed. We can see that under certain selections for covered autos the B(5) provision of the endorsement would not lead to absurd consequences; however, because of the selection for covered autos (i.e. "any `auto"') for liability purposes in this policy, the B(5) provision leads to absurd consequences.
Ratcliff, 634 So.2d at 1236.[5] Similarly, the Second Circuit denied UM benefits to an employee who sought UM coverage under her employer's automobile liability insurance policy for an accident that occurred while she was driving her own vehicle in the course of her employment. Because her car was not listed as a covered automobile under the UM provisions of her employer's policy, she was not entitled to UM benefits, even though she argued that she was insured for liability coverage by virtue of the fact that she was driving a "covered auto," which for liability coverage was defined in the policy as "any auto." Dunn, 768 So.2d at 722-24.
The Dunn case followed and cited a Louisiana Supreme Court case that approved the Ratcliff rationale in interpreting a similar policy under similar factual circumstances. See Carrier, 759 So.2d 37. The Carrier case also involved an employee using his own pickup truck in the course and scope of his employment and seeking UM coverage under his employer's business automobile insurance policy. After noting the internal inconsistency discussed above, the court reiterated the longstanding rule of strict construction against the insurer and in favor of coverage *1211 when an ambiguity cannot be resolved, but only if each of the alternative interpretations is reasonable. Carrier, 759 So.2d at 43-44. It concluded that:
[A]n interpretation of Section B5 to include, in the definition of an insured for UM coverage, any person (other than the named insured) occupying "any auto" (as "covered auto" is indicated in the liability section of the policy) is not a reasonable interpretation. It simply is not reasonable to ascribe to the contracting parties an intention to provide UM insurance worldwide to any person occupying any auto. . . . [T]he literal language of Section B5 . . . leads to unreasonable and even absurd consequences.
Carrier, 759 So.2d at 44. Therefore, the court determined that the only reasonable interpretation of the ambiguous policy provision was to conclude that "covered autos" for UM insurance coverage were only those specifically described in the policy. The court further examined the plaintiff/employee's argument that UM coverage was statutorily required because he qualified as an insured under the liability portion of the policy, and determined that under the relevant policy provisions, he did not so qualify. Carrier, 759 So.2d at 44-45. The court explained that because it had ruled in favor of the insurer on other grounds, it was not necessary to address whether UM coverage was precluded by the clear language of subparagraph (e) (as the Shackleford court had held under different factual circumstances). Carrier, 759 So.2d at 43 n. 11.
Following Carrier, the Second Circuit found in the McEachern case that, under the applicable policy provisions, the plaintiff was not insured for UM or liability coverage under his employer's policy while driving his personal vehicle in the course and scope of his employment. McEachern, 826 So.2d at 1182. In the Southerland case, the Second Circuit went a step further and used the Fifth Circuit's rationale in Shackleford, applying subparagraph (e) as a clear statutory exception to the general rule that if a claimant is an "insured" for liability coverage under the policy, he must be provided UM coverage. The court held that the employee's personal vehicle was not a "covered auto" within the scope of the UM coverage provision in the policy, because it was not specifically listed therein, and further stated:
Even assuming that Southerland would be an insured under the liability endorsement, [LSA-R.S. 22:680(1)(e)] specifically states that the mandatory UM coverage does not apply to bodily injury of the insured while the insured is occupying a vehicle owned by the insured but not described in the insurance policy. Southerland (the alleged insured) was injured while driving a vehicle he owned that is not described in Continental's policy. Therefore, this argument is without merit.
Southerland, 837 So.2d at 713-14.
After reviewing the UM statute and jurisprudence, we agree that the reasoning of the Second Circuit in Southerland is correct. The Carrier case determined that precisely the same UM provisions as in the case before us could only be reasonably interpreted as precluding UM coverage for an employee occupying his own vehicle, when that vehicle is not described in the policy. We are persuaded by that determination. Additionally, we conclude that LSA-R.S. 22:680(1)(e) is a statutory exception to the general rule that if a person is an insured for liability coverage under a policy, UM coverage must be provided for him. In the initial cases interpreting subparagraph (e), there was no doubt that the claimants were insured under the liability provisions of the policies under which they claimed UM coverage. See, e.g., Haltom, 588 So.2d 792; Jones, *1212 619 So.2d 111, and Shackelford, 646 So.2d 1209. Yet, UM coverage was denied because the vehicles they occupied were not specifically described in the policies under which they were claiming coverage. There is no reason why subparagraph (e) should not be similarly applied when the factual scenario involves an employee driving his own vehicle and seeking UM coverage under his employer's policy, when the vehicle involved in the accident is not listed in the employer's policy. The language of the statute is clear. Even if Halphen were considered an "insured" for liability coverage under the American policy, he is not entitled to UM coverage under that policy, because he was not driving a vehicle that was specifically listed in the policy. Therefore, the district court in this case correctly denied Halphen's claims for UM coverage from American.

CONCLUSION
For the foregoing reasons, the judgment denying Halphen's claims for UM coverage and dismissing American from the suit is affirmed. All costs of this appeal are assessed to Halphen.
AFFIRMED.
NOTES
[1] The other defendants included: Halphen's automobile liability and UM insurer, State Farm Mutual Automobile Insurance Company; the other driver, Luis O. Borja; Borja's automobile liability insurer, Eagle Insurance Company; Borja's alleged employer, Davis Mechanical Contractors, Inc.; and American, in its capacity as Davis's liability insurer.
[2] An earlier motion for summary judgment filed by American on this issue had been denied. However, after that judgment, another appellate court rendered judgment on this issue, so American re-urged its motion and cited this new jurisprudence to the district court in support of its motion.
[3] Although the cited cases refer to the UM statutory provisions as being found in LSA-R.S. 22:1406(D), these provisions were redesignated as LSA-R.S. 22:680 by 2003 La. Acts, No. 456, § 3. For the sake of clarity, we will reference LSA-R.S. 22:680 throughout this opinion.
[4] For simplicity in this opinion, we will refer to this provision as subparagraph (e).
[5] Noting that in 1999, when it decided a similar case, there was a split in the Louisiana appellate courts on this issue, the federal Fifth Circuit Court of Appeals interpreted similar policy language and followed the Ratcliff rationale, concluding that an employee seeking UM coverage under his employer's business automobile liability policy was not covered, because UM coverage was limited to specifically described vehicles, and his personal automobile was not described in the policy. Ehrlicher, 171 F.3d at 214-15.